## 15-1832

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

◆

IN RE: CSB-SYSTEM INTERNATIONAL, INC.,

*Appellant.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE
PATENT TRIAL AND APPEAL BOARD IN REEXAMINATION
CONTROL NO. 90/012,210

## BRIEF FOR APPELLANT

BRUCE KOCH
THORSTEN SCHMIDT
SCHMIDT LLC
560 Lexington Avenue, 16th Floor
New York, New York 10022
(212) 809-1444

*Attorneys for Appellant*

September 14, 2015

## CERTIFICATE OF INTEREST

Counsel for the Appellant CSB-System International, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is:

      CSB-System International, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      None

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      CSB System AG

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

      Bruce Koch
      Thorsten Schmidt
      SCHMIDT LLC
      560 Lexington Ave, 16th Floor
      New York, NY 10022
      (212) 809-1444

September 14, 2015          /s/ Bruce J. Koch
                           *Counsel for Appellant*

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST .................................................................. i

TABLE OF CONTENTS.......................................................................... i

TABLE OF AUTHORITIES .................................................................. iv

STATEMENT OF RELATED CASES ....................................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES..............................................................2

STATEMENT OF THE CASE SETTING OUT THE FACTS RELEVANT TO THE ISSUES........................................................................................3

    A.   Statement Of The Case.................................................................3

    B.   Statement Of The Facts ...............................................................4

        1.  The '953 Patent ......................................................................4

        2.  Claims At Issue .....................................................................8

        3.  Main References Cited in the Office Action............................10

           a.   Heinzelmann (US 4,866,758).........................................10

           b.   Gursahaney (US 5,097,528)...........................................11

           c.   IBM CallPath CallCoordinator/2 System Administrator's Guide ......11

SUMMARY OF THE ARGUMENT ......................................................12

ARGUMENT .......................................................................................17

  I.   Standard Of Review .....................................................................17

  II.   The Board's Construction Of Key Claims Terms Was Erroneous .............18

    A.   The Board Improperly Used The Broadest Reasonable Interpretation To Construe The Claims.................................................18

    B.   The Board's Constructions Are Not Reasonable Under The Broadest Reasonable Interpretation.......................................................19

1. The Board's Construction Of The "Personal Computer" Limitation As Encompassing Personal Computers Operating As Terminals In The Claimed System Was Not Reasonable ....................................................20

   a. The Board's Construction Was Not Supported By Substantial Evidence .............................................................................................21

   b. The Board Improperly Shifted The Burden Of Persuasion And Production Onto CSB ..........................................................................23

   c. The Board's Construction Contradicts the Specification of the '953 Patent ...................................................................................................24

   d. The Prior Art Authors Referred To The Personal Computers Operating Through Terminal Emulation Programs In The CTI System As Terminals .......................................................................................26

   e. The Board Has Impermissibly Re-Written Prior Art References To Include An Invention That Was Never Conceived, Appreciated Or Disclosed By The Prior Art Authors ..................................................30

   f. The Board Should Have Used The Well-Known And Common Meaning Of "Personal Computer" ......................................................33

   g. The Third Party Requester Admitted That Claim 1 Was Client Server With The Personal Computers Making Client Requests For CTI Data ...........................................................................................34

2. The Board's Construction Of "LAN Server" Was Not Reasonable ........36

III. CLAIM 1 WAS NOT ANTICIPATED BY HEINZELMANN .................38

  A. Heinzelmann Failed To Meet The "LAN server" Limitation Of Claim 1 ....................................................................................................39

  B. Heinzelmann Failed To Meet The "EDP System" Limitation Of Claim 1 ....................................................................................................41

  C. Heinzelmann Failed To Meet The "At Least One Connection Element Selected From The Group Consisting Of An SDLC Connection Element And An ISDN Connection Element" Limitation Of Claim 1 .................42

IV. CLAIM 1 WAS NOT ANTICIPATED BY GURSAHANEY ...................46

  A. Gursahaney Failed To Meet The "A Plurality Of Personal Computers" Limitation Of Claim 1 .............................................................................47

ii

B.    Gursahaney Failed To Meet The "LAN server" Limitation Of Claim 1 .49

V.    CLAIM 1 WAS NOT OBVIOUS OVER GURSAHANEY IN VIEW OF DORST ...................................................................................52

VI.    CLAIMS 7-8 WERE NOT OBVIOUS GURSAHANEY IN VIEW OF DORST AND FURTHER IN VIEW OF OKATA OR KOSHIISHI .........52

VII.    CLAIM 1 Was NOT OBVIOUS OVER THE CALLCOORDINATOR ADMINISTRATOR'S GUIDE IN IN VIEW OF GURSAHANEY .......52

A.    The Administrator's Guide Is Not Prior Art...............................................53

1.    Proper Foundation For The Administrator's Guide Was Absent ............53

2.    The Administrator's Guide Did Not Qualify As A Printed Publication..56

B.    The Administrator's Guide In Combination With Gursahaney Failed To Meet The "A Plurality Of Personal Computers" Limitation ..................57

C.    The Administrator's Guide In Combination With Gursahaney Failed To Meet The LAN Server Limitation Of Claim 1 .........................................58

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................59

CERTIFICATE OF SERVICE ..............................................................................62

CERTIFICATE OF COMPLIANCE......................................................................63

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Amgen Inc. v. Hoechst Marion Roussel, Inc*.
    314 F.3d 1313 (Fed. Cir. 2003) ........................................................31

*Amgen, Inc. v. Chugai Pharm. Co.*
    927 F.2d 1200 (Fed. Cir. 1991) ........................................................30

*Ariad Pharms., Inc. v. Eli Lilly & Co*.
    598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) ........................................31

*Beckman Instruments, Inc. v. LKB Produkter AB*
    892 F.2d 1547 (Fed. Cir. 1989) ........................................... 29, 32, 49

*Consolidated Edison Co. v. NLRB*
    305 U.S. 197 (1938).........................................................................17

*CSB-Sys. Int'l, Inc. v. SAP America, Inc.*
    C.A. No. 10-2156, 2011 U.S. Dist. LEXIS 83462 (E.D. Pa. 2011) ........... 37, 38

*Dickenson v. Zurko*
    527 U.S. 150 (1999).........................................................................22

*Falkner v. Inglis*
    448 F.3d 1357 (Fed. Cir. 2006) ........................................................17

*Fiers v. Sugano*
    984 F.2d 1164 (Fed. Cir.1993) ........................................................31

*Finisar Corp. v. DirecTV Group, Inc.*
    523 F.3d 1323 (Fed. Cir. 2008) ................................................. 37, 45

*Gechter v. Davidson*
    116 F.3d 1454 (Fed. Cir. 1997) ................................................. 22, 42

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*
    655 F.3d 1291 (Fed. Cir. 2011) ........................................................36

*Glaxo Grp. Ltd. v. Apotex, Inc.*
    376 F.3d 1339, (Fed. Cir. 2004) ......................................................42

*Hitzeman v. Rutter*
    243 F.3d 1345 (Fed. Cir. 2001) ......................................................17

iv

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*
   802 F.2d 1367 (Fed. Cir. 1986) .........................................................................30

*In re Ahlert*
   424 F.2d 1088 (CCPA 1970) ..............................................................................23

*In re Cronyn*
   890 F.2d 1158 (Fed. Cir. 1989) .........................................................................56

*In re Gartside*
   203 F.3d 1305 (Fed. Cir. 2000) ........................................................... 17, 22, 24

*In re Lee*
   277 F.3d 1338 (Fed. Cir. 2002) ................................................................. 22, 23

*In re Leithem*
   661 F.3d 1316 (Fed. Cir. 2011) .........................................................................22

*In re NTP, Inc.*
   654 F.3d 1279 (Fed. Cir. 2011) ........................................................... 17, 54, 55

*In re Oelrich*
   666 F.2d 578 (CCPA 1981) ................................................................................44

*In re Rambus, Inc.*
   753 F.3d 1253 (Fed. Cir. 2014) .........................................................................18

*In re Trans Texas Holding Corp.*
   498 F.3d 1290 (Fed. Cir. 2007) .........................................................................19

*In re Turlay*
   304 F.2d 893 (CCPA 1962) ........................................................................ 15, 41

*In re Wyer*
   655 F.2d 221 (CCPA 1981) ................................................................................54

*In re Zurko*
   258 F.3d 1379 (Fed. Cir. 2001) ................................................................. 22, 23

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*
   381 F.3d 1111 (Fed. Cir. 2004) .........................................................................20

*Insituform Techs. Inc. v. CAT Contracting, Inc.*
   99 F.3d 1098 (Fed. Cir. 1996), *cert. denied*, 117 S. Ct. 1555, 137 L. Ed. 2d
   703, 1992 WL 134332 (1997) ...........................................................................20

*Invitrogen Corp. v. Clontech Labs., Inc.*
    429 F.3d 1052 (Fed. Cir. 2005) .......................................................30

*Key Pharms. v. Hercon Labs. Corp.*
    161 F.3d 709 (Fed. Cir. 1998) .........................................................36

*Lighting Ballast Control LLC v. Philips Elecs. N. Am.*
    744 F.3d 1272 (Fed. Cir. 2014) (*en banc*) .......................................18

*Martek Biosciences Corp. v. Nutrinova, Inc.*
    579 F.3d 1363 (Fed. Cir. 2009) .......................................................31

*Motorola Mobility, LLC v. Int'l Trade Comm'n*
    737 F.3d 1345 (Fed. Cir. 2013) .......................................................42

*Net MoneyIN, Inc. v. VeriSign, Inc.*
    545 F.3d 1359 (Fed. Cir. 2008) .......................................................40

*Orion IP, LLC v. Hyundai Motor Am.*
    605 F.3d 967 (Fed. Cir. 2010) .........................................................57

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*
    491 F.3d 1342 (Fed. Cir. 2007) .......................................... 29, 32, 48

*Phillips v. AWH Corp.*
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................ 12, 33

*Silvestri v. Grant*
    496 F.2d 593 (CCPA 1974) ..............................................................31

*SRI Int'l, Inc. v. Internet Sec. Sys.*
    511 F.3d 1186 (Fed. Cir. 2008) .......................................................56

*Tempo Lighting, Inc. v. Tivoli, LLC*
    742 F3d 973 (Fed. Cir. 2014) .........................................................18

*Verdegaal Bros. v. Union Oil Co. of California*
    814 F.2d 628 (Fed. Cir. 1987) .........................................................46

*Visto v. Microsoft*
    *C.A.,* No. 2:05-CV-5462007, U.S. Dist. LEXIS 97893 (E.D. Tex. Aug. 28,
    2007) .........................................................................................38

*Vitronics Corp. v. Conceptronic, Inc.*
    90 F.3d 1576 (Fed. Cir. 1996) .........................................................19

*W.L. Gore & Assoc. v. Garlock. Inc*.
    721 F.2d 1540, 1553 (Fed. Cir. 1983) ....................................................... 33, 44

## Statutes

5 U.S.C. § 55 ........................................................................................................25

## Rules

Federal Rule of Evidence 901 ......................................................................... 53, 54

M.P.E.P. § 2131 .......................................................................................... 46, 48, 49

M.P.E.P. § 2258(G) ..............................................................................................16

MPEP § 2131.01 ...................................................................................................48

## Regulations

37 CFR § 1.530(d) ................................................................................................16

## STATEMENT OF RELATED CASES

No other appeal from the United States Patent and Trademark Office Patent Trial and Appeal Board ("PTAB" or "Board") has previously been made in *ex parte* Reexamination No. 90/012,210 of U.S. Patent 5,631,953, before this Court or any other appellate court.

Counsel know of no other case pending in this or any other court or body that will directly affect or be affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

CSB-System International, Inc. ("CSB") appeals the decision of the U.S. Patent and Trademark Office Patent Trial and Appeal Board ("the Board") affirming the final rejection of the claims of U.S. Patent No. 5,631,953 ("the '953 patent") in *ex parte* reexamination Control No. 90/012,210.  A00011-A00030.  The Board had jurisdiction over that appeal under 35 U.S.C. § 134(b).

On March 30, 2015, the Board entered its final decision denying rehearing (A00002), of its decision dated July 31, 2014. A11.  Appellant timely filed a notice of appeal on June 1, 2015.

The Court has jurisdiction over this appeal pursuant to 28 U.S.C.  1295(a)(4)(A) and 35 U.S.C. § 141(b).

## STATEMENT OF THE ISSUES

1.    Whether the Board properly affirmed the Examiner's construction of the term "personal computer" of system claim 1 as comprising "a personal computer operating as a terminal" in the claimed system.  A00017-A00018.

2.    Whether the Board properly affirmed the construction of the claim term "LAN server."  A00019-A00020.

3.    Whether the Board correctly affirmed the rejection of claim 1 under 35 U.S.C. §102(e) as being anticipated by U.S. Patent No. 5,821,877 ("Heinzelmann").  A00021-A00023.

4.    Whether the Board correctly affirmed the rejection of claims 1-6 as being anticipated by U.S. Patent No. 5,097,528 ("Gursahaney").  A00023-A00024.

5.    Whether the Board correctly affirmed the rejection of claims 1-6 under 35 U.S.C. § 103(a) as being unpatentable over Gursahaney in view of U.S. Patent No. 5,046,183 ("Dorst").  A00024-A00026.

6.    Whether the Board correctly affirmed the rejection of claims 7-8 as being unpatentable over Gursahaney in view of Dorst and further in view of either U.S. Patent No. 4,995,073 ("Okata") or U.S. Patent No. 4,652,933 ("Koshiishi").  A00026-A00027.

7.    Whether the Board correctly affirmed the rejection of claims 1-8 under 35 U.S.C. § 103(a) as being unpatentable over IBM CallPath

CallCoordinator/2 System Administrator's Guide (Appendix Dl)[1] in view of

Gursahaney.  A00027-A00030.

## STATEMENT OF THE CASE SETTING OUT
## THE FACTS RELEVANT TO THE ISSUES

### A.     Statement Of The Case

This case arises out of an *ex parte* reexamination of the '953 patent, which

issued May 20, 1997, and was ultimately assigned to appellant CSB. A00031.

The Examiner issued a final Office Action on February 5, 2013 which

rejected claims 1-8 of the '953 patent as anticipated and/or rendered obvious based

upon prior art references. A09767-A09868.

CSB, the owner of the patent under reexamination, as authorized under

35 U.S.C. §§ 134(b) and 306, appealed the Examiner's final rejection of claims to

the Board.  On July 31, 2014, the Board issued its decision on appeal that affirmed

all of the Examiner's rejections. A00011-A00030.

CSB requested rehearing of the Board's decision. A11451-A11475.  The

Board issued its decision denying rehearing on March 30, 2015. A00001-A00010.

_____

[1] The Board Decision was based upon other related CallCoordinator references but

the Examiner admitted that the Section 103 rejection was based solely on the

CallCoordinator Administrator's Guide and that the other references were used

only to show "similarities between the Appendices."  A11258.

CSB timely filed a notice of appeal to this Court on June 1, 2015.

**B.    Statement Of The Facts**

 1. <u>The '953 Patent</u>

The '953 patent entitled Circuit Arrangement For Integration Of EDP Systems In The Utilization Of Telephone Systems claims priority to an application that was filed on March 5, 1993.  A00031.  The '953 patent discloses a specific architectural system for integrating an electronic data processing (EDP) system with a telephone system so that the EDP system can use the incoming telephone information as a key to access a customer profile while retaining all capabilities of the EDP system.  A00033, 2:31-34; A00033, 3:41-44; A00034, 4:24-A00035, 5:17.

Integration of an EDP system with a telephone network was especially beneficial to agents at customer call centers because the agent in real time can speak to the customer while simultaneously reviewing data about the customer or her order.  A00033, 1:22-28.  This allowed the call center agent to more efficiently respond to the customer's inquiry and more quickly solve the customer's problem.

Prior to the integration of EDP and intelligent telephone systems when a customer called a call center the customer was required to manually provide identification information to the called agent.  A00033, 1:17-28.  The agent then manually entered this information into a screen and only then initiated a database

4

lookup to receive additional information about the customer, for example their last order or shipping address. However, with the advent of an integrated EDP and telephone system the called agent received this additional data automatically. Thus when the call center agent answers the customer call the customer information is simultaneously displayed on the agent's personal computer (PC) allowing a more efficient and effective customer service. A00034, 3:62-66; A00034, 4:53-64.

The invention of the '953 patent was not the first system to integrate an EDP system with a telephone system. However, the invention of the '953 patent was the first to integrate an EDP system with a telephone system using a distributive architecture employing personal computers interacting with a LAN server. The personal computers sent and received data records and made client requests to the LAN server and its database, and the LAN server responded to these requests. A00034, 4:33-35.

In contrast, the prior art solutions disclosed an integrated EDP and telephone system that employed a Host Computer running a host application that controlled the system and only interacted with terminals or personal computers operating as terminals via an exchange of menu images. It is uncontested that in the systems of the prior art cited by the Board that the personal computers are operating as terminals send and receive screen menu images via terminal emulation.

Figure 1 of the '953 patent shows a schematic of the system claimed in

5

claim 1.



A00032.

When a customer calls from the outside telephone network (labeled 1 in Fig.1), the call is internally routed to one of the center's call agents. Each call agent has a personal computer (labeled 4, 12, and 14, in Fig. 1) and a telephone (illustrated by boxes 2, 11, and 13). The key feature of the '953 patent is the relationship between the server (labeled 10 in Fig. 1) and the personal computer of the customer service agent (e.g. item 4 in Fig. 1). In the architecture of the claims and specification of the '953 patent, the personal computers initiate client requests to the LAN server and its associated database to get information. A00034, 4:52-55. The personal computers in the claimed system are important in order to make

the database request for customer information because the personal computers are in control and direct the request.

Significantly, the specification of the '953 patent never mentions "terminals," "hosts," "terminal emulation" or the sending of formatted or screen images. A00031-00036. Instead, the specification of the '953 patent discloses the sending of data records to and from personal computers and requests by personal computers to a LAN server and its database using the appropriate information:

> This is realized by the integration element 5 in such a way that when a call is connected to telephone extension 2 a signal is immediately sent on line b by the intelligent telephone system 3 to the integration element 5, which assigned the appropriate information in a data record by the integration element 5, is passed via the LAN 9 to the associated personal computer 4. Here it is possible to pass the caller data and information directly from the LAN server 10 and its database at the same time as the call arrives.

A00034, 4:47-55.

> … the personal computers are provided with keyboards so that a speech or data communication between a caller via the at least one telephone network and a competent party on one of the telephone extensions with a respectively assigned one of the personal computers is sent to another competent party and back after the respective competent party has sent a data record assigned the appropriate information to the integration element by operating the keyboard of the respectively assigned one of the personal computers, and a necessary signal leaving the integration element is applied at the intelligent telephone system and a connection to at least one another or every telephone extension is established, so that a connection to every telephone extension simultaneously provides an immediate integration of the personal computer assigned to the telephone extension in the established speech and data communication.

A00033, 2:65-3:14.

Thus, while the inventors of the '953 patent did not invent an integrated EDP system and telephone system, they did invent and claim a system that used a very specific architecture requiring personal computers to send and receive data records and make requests to the LAN server and its database using the appropriate information.

Therefore, the key issue in this appeal is not whether the prior art disclosed a system to integrate an EDP and telephone system but whether the prior art disclosed the system claimed in the '953 patent which had personal computers sending and receiving data records and making requests to the LAN server and its database.

2.    <u>Claims At Issue</u>

Claim 1 is the only independent claim and recites:

1. A circuit arrangement for integration of ***EDP systems*** in utilization of telephone systems connected to a public ISDN or Euro ISDN telephone network,

the circuit arrangement comprising a ***plurality of telephone extensions*** which are directly connectable to a telephone network selected from the group consisting of a public ISDN telephone network and Euro ISDN telephone network;

a first line;

an ***intelligent telephone system*** arranged so that said telephone extensions are connectable with said at least one telephone network through said first line and said intelligent telephone system;

8

*a plurality of personal computers*;

an integration element arranged between said intelligent telephone system and said personal computers, said integration element receiving signals via at least one connection element selected from the group consisting of an ***SDLC connection element and an ISDN connection element*** via a second line from said at least one telephone network via said intelligent telephone system and sending back signals to said at least one telephone network, said integration element also sending a data record assigned an appropriate information via a third line, via a LAN connected to a LAN server by a fourth line and via a fifth line to said personal computers again;

a computing system; and

a software layer arranged so that conversion of the signals into a data record and vice versa is carried by said integration element, by said computing system by said software layer and by said at least one connection element with an internal software.

A00035 (emphasis added).

As claim 1 makes clear the claimed circuit arrangement is composed of several different components each with specified functional requirements and assembled in a specified arrangement so that a functional computer integrated system (CTI) is generated.

Claims 2-8 add limitations to claim 1 including a keyboard to allow transfers and conference calls (claims 2 and 3), an integration element configured to allow conference calls (claims 4-6) and an integration element to allow fax transmissions between the service agents and/or the caller (claims 7 and 8). A00036.

3.    Main References Cited in the Office Action

a.    *Heinzelmann (US 4,866,758)*

Heinzelmann discloses a technique for providing ***phone management***

***services*** (*i.e.* using the computer to make external calls) to a personal computer –

not an integrated EDP and telephone CTI system.

> The present invention relates to a technique for providing phone
> management (PM) services to personal computers (PCs) which are
> end users of a PC-only Local Area Network (LAN) by logically
> associating voice terminals of a separate voice and data Network, e.g.,
> a Private Branch Exchange (PBX), with the PCs.

A04097.

Thus, the techniques described in Heinzelmann allows a computer user to

control a telephone device from her personal computer. A04978.  Heinzelmann

does not disclose a computer system automatically retrieving a customer profile

from the data from the incoming telephone call.  A04974-A04982.  Instead, the

stated objective of Heinzelmann was to associate telephones with a PBX

(telephone switch) and a personal computer to allow the personal computers to

make and receive the telephone calls:

> The description of the present invention which follows ***is directed to***
> ***the technique of locally associating a telephone connected to*** an
> AT&T System 25, 75 or System 85 data ***and voice communication***
> ***system***, hereinafter referred to as a PBX network, and a personal
> computer (PC) or minicomputer connected to a separate AT&T
> STARLAN PC Local Area Network (PC-LAN) in order to provide a
> phone management server application.

A04978, 2:59-67 (emphasis added).

10

###### b.    *Gursahaney (US 5,097,528)*

Gursahaney discloses an integrated telephone system and computer system. However, Gursahaney's architecture is different than the architecture of claim 1 of the '953 patent.  In contrast to the system of the '953 patent which requires LAN servers and personal computers exchanging "data records," the integrated system of Gursahaney only discloses a controlling Host Computer that exchanges menu images with devices operating as terminals.  A05347, 1:55-60; A05360, 25:1-5. Further, it is incontestable that the computing devices of Gursahaney are strictly operating as terminals within the system, including in all interactions with the other components.  A05349-5351.  Thus, in contrast to the client/server system of the claims of the '953 patent, Gursahaney only discloses a Host/terminal architecture.

###### c.    *IBM CallPath CallCoordinator/2 System Administrator's Guide*

The IBM CallPath CallCoordinator/2 System Administrator's Guide (2d ed. Mar. 1992) ["Administrator's Guide"] that the Board used is several faxed pages without context from what appears to be a larger manual.  A04289-04311; A0928-29.  This document was provided by Third Party Requester who provided no information about where it was acquired and where it could be found. A05153; A04289.  The Board did not contest that the Examiner and CSB, despite over three years of searching, were unable to locate either this document or the actual full document.  A00027-00028.  This incomplete document was alleged to be IBM's

commercial embodiment of Gursahaney Host/terminal computer integrated telephony (CTI) system and only discloses a Host/terminal system exchanging screen menu images. A04302.

## SUMMARY OF THE ARGUMENT

### The Board's Improper Claim Constructions

The Board and the Examiner committed several reversible legal errors in construing key claim terms.  First, the Board improperly construed the claims of the '953 patent using the "broadest reasonable interpretation."  As the Board admitted, the '953 patent had expired.  Thus, the Board should have used basic principles of claim construction set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).  Because the Board's invalidity analysis was based upon these improper claim construction the Board's invalidity rejections must be reversed.

Further, even under the broadest reasonable interpretation, the Board's construction of several key terms was erroneous.  First, the Board and the Examiner failed to provide any evidence in support of key claim constructions in violation of the Administrative Procedure Act (APA).  In fact, as shown below, several of the Board's constructions were contradicted by the '953 patent and the very prior art relied upon by the Board.

For example, the Board improperly construed the claim term "personal

12

computer" of system claim 1 as encompassing "a personal computer operating as a terminal" in the claimed system. A00017-A00018. The Board provided no support for its position as required by the APA. *Id.* The Board then compounded its mistake by improperly placing the burden of proof onto CSB. *Id.*

Significantly, the Board's construction was contrary to the '953 patent and the prior art. The '953 patent never mentioned the terms "terminal" or "terminal emulation" and in fact taught away from using these systems. Thus, persons of ordinary skill in the art at the time of the invention would not believe that these components were within the claimed CTI system of the '953 patent. Moreover, the prior art reference relied upon by the Board, consistently referred to personal computers operating through terminal emulation as "terminals." Again, persons of ordinary skill in the art at the time of the invention or even now would not consider a terminal or device operating as a terminal in the functional system to be within the meaning of "personal computer."

The Board's "construction" (or actually non-construction) of the claim term "server," and its resulting infringement analysis was equally erroneous. The Board found that the mere presence of a device in the prior art labeled "server" was enough to satisfy the claim limitation. A00018; A09499. The Board held that there was no need to determine if the alleged analogous structure responded to requests from client devices even though the Board agreed that the term "LAN Server" had

13

a well-known meaning that includes responding to request from client devices. *Id*.

Moreover, the Board made no determination if the alleged analogous structure

responded to personal computers of a CTI system. *Id*.  The Board further held that

it did not need to determine if the alleged analogous structure was arranged as in

the claims. A00022.

**The Board's Rejections Based Upon Heinzelmann Was Erroneous**

The Board's Section 102 rejection based upon Heinzelmann was erroneous

and not supported by substantial evidence for several reasons.  The Board found

that Heinzelmann met the "LAN server" limitation just because it disclosed

somewhere in the reference a server.  A00022.  The Board failed to provide any

support and failed to compare the alleged analogous structure against the claim as

construed. *Id*.  For example, the Board made no determination whether this

alleged server responded to requests from clients in a CTI system as required by

the agreed upon construction of this term. *Id*.  The Board further failed to make

any determination if the server of Heinzelmann was arranged as in claim 1. *Id*.

Had the Board employed the proper test it would have been clear that Heinzelmann

does not even disclose a CTI system, and thus, the server of Heinzelmann cannot

meet the "server" limitation of claim 1.

Second, the Board's determination that Heinzelmann met the SDLC

connection element limitation was not supported by substantial evidence.  The

14

Board's determination regarding this limitation was pure conjecture and was not supported by Heinzelmann or any other evidence.

Third, regarding the "EDP" limitation, the Board found that the shared database requirement was met by Heinzelmann even though Heinzelmann was silent as to a shared database. A00023. The Board found that this limitation was met because a server was disclosed in Heinzelmann. *Id.* However, no evidence was ever presented by the Board to support such an inference that a server necessarily included a "shared database." Thus, the Examiner's finding lacked the proof necessary for this claim limitation. *See also In re Turlay*, 304 F.2d 893, 899 (CCPA 1962) (A reference relied on to prove unpatentability must be so clear and explicit that those skilled in the art will have no difficulty in ascertaining its meaning).

**The Board's Rejections Based Upon Gursahaney Was Erroneous**

The Board's rejections based on Gursahaney were erroneous. Gursahaney did not disclose "personal computers" or a "server" in a claimed CTI system. Instead, Gursahaney only disclosed a CTI system in which a Host Computer controlled the system and interacted with functional terminals through menu images. This was a classic Host/Terminal system. Persons of ordinary skill in the art would not believe that the CTI system of Gursahaney read on the claims of the '953 patent.

15

Further, the Board by expanding Gursahaney beyond what it taught or

disclosed placed the invention of the '953 patent into the hands of prior art authors

a client/server CTI system that they did not disclose, appreciate or describe.  In

doing so, the Board used impermissible hindsight.

**The Board's Rejection Based Upon**
**The Administrator's Guide Was Erroneous**

Last, the Board's rejections based upon the Administrator's Guide were

erroneous.  First, the Board's determination that the Administrator's Guide was

authentic and qualified as prior art was not supported by substantial evidence.  The

uncontested evidence showed that the Administrator's Guide was incomplete,

could not be located despite several years of searching and could not be obtained

by a person interested at the time of the '953 patent.  A04289.  The Board relied

solely on a March 1992 date contained on one page as proof of the authenticity and

the date available to the public. A00028; A04230.  However, there was no other

independent corroborating evidence that the Administrator's Guide was in fact

authentic and that it was available prior to the filing date of the '953 patent.

Second, the Administrator's Guide in conjunction with Gursahaney did not

meet the "personal computer" or "LAN server" limitation of the claims.  The

Administrator's Guide was a Host/terminal CTI system that did not disclose the

use of PCs communicating with a server which responded to requests from clients.

The workstations of the Administrator's Guide were operating as terminals in the

16

system and exchanged menu images with a Host. Therefore, the Board's

determination that the Administrator's Guide disclosed "personal computer" or a

"LAN server" was not supported by substantial evidence and should be reversed.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews the PTAB's legal conclusions *de novo* and underlying

factual determinations are reviewed for substantial evidence. *In re Gartside*, 203

F.3d 1305, 1312 (Fed. Cir. 2000). The substantial evidence standard requires this

Court to inquire whether the Board's decision is based upon "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Hitzeman v. Rutter*, 243 F.3d 1345, 1353-54 (Fed. Cir. 2001) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229-30 (1938)). Further,

"[s]ubstantial evidence is more than a mere scintilla." *Gartside*, 203 F.3d at 1312

(internal quotation marks and citation omitted). The record as a whole is to be

examined, taking into account both the evidence that justifies and detracts from the

Board's opinion. *See Falkner v. Inglis,* 448 F.3d 1357, 1363 (Fed. Cir. 2006).

Whether an invention would have been obvious at the time it was made is a

question of law, which this court reviews *de novo* based on underlying facts.

*Gartside*, 203 F.3d at 1316. Anticipation and prior art teachings present questions

of fact. *In re NTP, Inc.*, 654 F.3d 1279, 1297 (Fed. Cir. 2011). Last, claim

construction is a question of law and is reviewed *de novo*. *Lighting Ballast Control LLC v. Philips Elecs. N. Am.*, 744 F.3d 1272, 1276-77 (Fed. Cir. 2014) (*en banc*).

## II.    THE BOARD'S CONSTRUCTION OF KEY CLAIMS TERMS WAS ERRONEOUS

### A.    The Board Improperly Used The Broadest Reasonable Interpretation To Construe The Claims

In its decision the Board admitted that is used the "broadest reasonable interpretation" standard to construe the claims of the '953 patent, even though it acknowledged that the '953 patent had expired.  A00014-00015.  This was erroneous.  Because the '953 patent had expired, the Board should have used ordinary claim construction principles. *See In re Rambus, Inc.*, 753 F.3d 1253, 1256 (Fed. Cir. 2014); *see also* 37 CFR § 1.530(d); M.P.E.P. § 2258(G).

The Board's failure to use the proper claim construction standard requires a reversal and remand to the Board because anticipation and obviousness were done using an improper claim constructions.  *Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F3d 973, 978 (Fed. Cir. 2014) (Factual findings based upon an erroneous claim construction cannot be used to support invalidity rejections).

In addition, the Board's use of an improper claim construction standard was critical because the Board's constructions were not consistent with the District Court's construction, the specification of the '953 patent specification or the prior art.  Had the Board used the proper claim construction standard it would have

18

found that the District Court's constructions were reasonable.  Under these

constructions it would have been clear that the cited prior art did not meet several

claim limitations.  Thus, the Board's improper use of the "broadest reasonable

interpretation" was wrong and the rejections should be reversed.

## B.    The Board's Constructions Are Not Reasonable Under The Broadest Reasonable Interpretation

Even under the "broadest reasonable interpretation" standard many of the

Board's claims constructions of claim terms of the '953 patent were not

reasonable.  In fact, many were contrary to the '953 patent and the prior art.  For

this additional reason, the Court should reverse the Board's decision affirming the

Examiner's rejection.

Although "[c]laims are given the broadest reasonable interpretation" during

reexamination proceedings, these construction must be "reasonable and "consistent

with the specification" and the ordinary meaning as seen by a person of ordinary

skill in the art.  *See, e.g.*, *In re Trans Texas Holding Corp.*, 498 F.3d 1290, 1298

(Fed. Cir. 2007).  It is well-settled that in the absence of a specific definition of a

claim term in the specification, "the words of a claim are generally given their

ordinary and customary meaning." *Phillips*, 415 F.3d at 1312; *see also Vitronics*

*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[We look to the

words of the claims themselves ... to define the scope of the patented invention").

Thus, "a claim construction analysis must begin and remain centered on the claim

19

language itself, for that is the language the patentee has chosen to particularly

point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as

his invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381

F.3d 1111, 1116 (Fed. Cir. 2004) (internal quotation marks and citation omitted).

Further, claims are not only measured by what they disclose but also by any

inherent limitations they may contain.  *See, e.g., Insituform Techs. Inc. v. CAT*

*Contracting, Inc.*, 99 F.3d 1098, 1106 (Fed. Cir. 1996), *cert. denied*, 117 S. Ct.

1555, 137 L. Ed. 2d 703, 1992 WL 134332 (1997) (finding that the subject claim

must be construed to have an inherent limitation of a "discontinuous vacuum"

based on the components of the invention expressly recited in the claim, as those

components were described in the subject patent specification).

1.    The Board's Construction Of The "Personal Computer"
      Limitation As Encompassing Personal Computers Operating
      As Terminals In The Claimed System Was Not Reasonable

The Board and the Examiner found that the term "personal computer" in

claim 1 encompasses a personal computer operating as a terminal in the claimed

system.  A00017.  In fact, the Examiner stated that any prior art reference that even

mentioned personal computer, even if that personal computer was operating as a

terminal would read on claim 1 of the '953 patent:

> With respect to this position, the examiner notes that the fact of the
> matter is that ***any prior art mention of "personal computer" even if it***
> ***operates in terminal emulation mode is still readable against the***

20

*claims* for the fact that those emulation prior arts still use "personal computers" as opposed to terminals.

A09778 (emphasis added).

For several reasons this interpretation was not reasonable. First, the Board committed procedural error because it did not provide support for its position and then placed the burden of proof onto CSB. Second, the Board's construction were not reasonable. The claims of the '953 patent were for a functioning CTI system in which the components were interconnected to carry out a specific functionality. Thus, the type of device ***in the functioning CTI system was the relevant issue*** and not the status of the component when purchased. Moreover, contemporaneous dictionaries show mutually exclusive definitions of "personal computers," "terminal emulation" and "terminals." Most importantly, the very prior art relied upon by the Examiner and the Board revealed that the prior art author named ***personal computers operating as terminals as terminals and not "personal computers*****."**

> a.    *The Board's Construction Was Not Supported By Substantial Evidence*

Significantly, neither the Board nor the Examiner cited any evidence in support of their position that at the time of the application leading to the '953 patent a person of ordinary skill in the art would believe that a device operating as a terminal was a personal computer of a functioning CTI system. A00019-00020*;*

*see Gartside*, 203 F.3d at 1312. ("[T]he Board's decision must be justified within the four corners of that record.").  For example, the Board pointed to nothing in the '953 patent specification or in contemporaneous dictionaries to support its assertion.  A00019-00020.  In fact, the '953 patent never mentioned terminals or terminal emulation.  A00031-00036.  Further, as shown below, the Board's positon was contradicted by the very prior art it relied upon because the authors of Gursahaney identified workstations operating as terminals as ***terminals*** and not personal computers.  Thus, the Board's decision was not supported by substantial evidence.

The failure of the Board to include any support or analysis runs afoul of the Administrative Procedure Act ("APA").  5 U.S.C. § 55; *see also Dickenson v. Zurko,* 527 U.S. 150, 152 (1999).  The APA requires that the Board's "opinion must contain sufficient findings and reasoning to permit meaningful appellate scrutiny." *Gechter v. Davidson*, 116 F.3d 1454, 1458 (Fed. Cir. 1997).  Thus, the Board must "show[] the evidence on which the findings are based, accompanied by the agency's reasoning in reaching its conclusion." *In re Zurko*, 258 F.3d 1379, 1386 (Fed. Cir. 2001); *In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002).

Further, the Board's authority to make findings based on its own experience or expertise is narrow. *See In re Leithem*, 661 F.3d 1316, 1319 (Fed. Cir. 2011). The Board may rely on a finding not supported by documentary evidence only

when the asserted fact is "capable of such instant and unquestionable demonstration as to defy dispute." *In re Ahlert*, 424 F.2d 1088, 1091 (CCPA 1970) (citation omitted).

Even if the Board relied upon what it asserts as general knowledge, that knowledge must be articulated and placed on the record. *Lee,* 277 F.3d at 1345. Moreover, when the Board makes its "core factual findings in a determination of patentability, ... the Board cannot simply reach conclusions based on its own understanding or experience or on its assessment of what would be basic knowledge or common sense." *Zurko*, 258 F.3d at 1386.   In the present case neither the Examiner nor the Board ever placed into the record this general knowledge or provided any support or reasoning for its determination.

The Board's resolute failure to create an evidentiary record and to make findings supported by evidence undermines effective administrative procedure and frustrates appellate review. *Id.*   Therefore, for this reason alone, the Board's decision should be reversed.

### b.     *The Board Improperly Shifted The Burden*
### *Of Persuasion And Production Onto CSB*

The Board then compounded its error in not supporting its claim construction of "personal computer" by improperly shifting the burden of persuasion and production onto CSB stating "Appellant points to no evidence indicating a personal computer operating as a terminal cannot send and receive

23

data records." A00018. This was improper because it was the Board's initial

burden to point to substantial evidence to support its position before the burden of

production shifts to CSB. *Gartside*, 203 F.3d at 1312. It was not up to CSB to

prove a negative. Only after the Board had met its burden of production did the

burden of production shift to CSB. In the present case the Board never satisfied its

burden, and thus the rejection should be reversed.

> c.   *The Board's Construction Contradicts*
> *the Specification of the '953 Patent*

By including devices that operate as terminals as within "personal

computers" the Board improperly negated the intent of the inventors who in the

claims and specification specifically used narrow language of "personal computer"

and not a broader term such as "computing device." By using narrow language the

intent of the inventors as seen by the claim language was to exclude terminals,

devices operating as terminals and other non-PC computing devices. The Board's

construction of "personal computer" as encompassing devices admittedly operating

as terminals in the CTI system improperly expanded the inventors' invention. The

inventors used "personal computer" to define the device that would operate in the

system. By using "personal computer" and not a broader term the inventors

purposely chose to limit the invention of claim 1 to a system in which personal

computers were functioning as personal computers in conjunction with a LAN

server to make ***client*** requests. This is a prototypical client server system.

Moreover, the '953 patent distinguished between personal computers and devices which operate in the claimed system as terminals.  The specification of the '953 patent when describing the claimed system never mentions "terminals," "hosts," "terminal emulation" or the sending of formatted or screen images.  A00031-00036.  In fact, the only mention of "terminal" is in the description of the prior art and the disadvantages of the prior art systems.  A00033, 2:15-28.

Instead, the specification of the '953 patent disclosed the sending of data records to and from personal computers and requests by personal computers to a LAN server and its database using the appropriate information:

> This is realized by the integration element 5 in such a way that when a call is connected to telephone extension 2 a signal is immediately sent on line b by the intelligent telephone system 3 to the integration element 5, which assigned the appropriate information in a data record by the integration element 5, is passed via the LAN 9 to the associated personal computer 4.  Here it is possible to pass the caller data and information directly from the LAN server 10 and its database at the same time as the call arrives.

A00034, 4:47-55.

Thus, the inventors of the '953 patent did not contemplate that devices acting as terminals would be within the personal computers of their claimed CTI system.  Had the inventors wished to encompass devices that operate as terminals in the claimed system such as the host to terminal CTI systems of the prior art, the inventors would have chosen a broader term such as "computing device."  But the inventors did not and it is improper for the Examiner and the Board to re-write the

25

claims many years later to expand the intent of the inventors under the guise of "broadest reasonable interpretation."

>    d.    *The Prior Art Authors Referred To The Personal Computers Operating Through Terminal Emulation Programs In The CTI System As Terminals*

Significantly, the Board's construction of "personal computer" as encompassing personal computers operating as terminals in a CTI system was directly contradicted by the very prior art that the Board used for its invalidity analysis. The authors of Gursahaney when discussing their disclosed CTI system referred to the personal computers operating through terminal emulation as **terminals** and not personal computers. For example, numerous passages in Gursahaney described the personal computers operating through terminal emulation as "terminals," "3270-type terminals" or "dumb terminals" and the receipt of data records as "terminal sessions":

>    The memory 104 in the **workstation** 100 includes a multi-tasking operating system 124 which can be the **OS/2** Extended Edition by IBM. The memory 104 also includes the ANI buffer 126. The memory 104 also includes a terminal emulation program 128, which can be for example the 3278/79 Emulation Control Program by IBM. The **3270 data stream is designed for communications between a host computer and a "dumb terminal**," such as an IBM 3278, characterized hereinafter as a 3270-type terminal. The path between the host computer **and the 3270-type terminal** [workstation] is usually through a communications control unit, such as an IBM 3274. Host application programs which must interface with a **3270-type terminal transmit** a screen's worth of display **data to the terminal** and receive back a screen's worth of display data **from the terminal**, without the requirement **for the terminal** performing sophisticated processing

26

steps on the data, other than the alteration of fields within menus which are represented by the display data.

A05355, 16:6-23 (emphasis added).

FIG. 6 also shows a detailed illustration of the memory 204 for the host A computer 200. In a telephone order entry application being described, the host A computer 200 will be running a data base manager program 212 for the purpose of storing and accessing a data base of customer information. When a telephone call is received by the PBX 120, the workstation 100 will interact with the host A computer 200 in a first *terminal session*, to access the customer data corresponding to the ANI data received from the PBX 120. The data base manager 212 is a pre-existing program which was designed to interface with *a 3270-type terminal* in a *3270 data stream operation*, for example.

A05356, 17:10-23 (emphasis added).

FIG. 10 is an organizational diagram of menu navigation in the data base manager program 212 running in session A with the workstation 100. Data base manager program 212 is a pre-existing *host based program which is designed to interact with a 3270-type terminal*.

A05356, 18:1-5 (emphasis added).

FIG. 16 shows an organizational diagram for the menu navigation through the menus for the order entry program 312 running in session B on the host B computer 300. The order entry program 312 is another pre-existing *host based program which was designed to interface with a 3270-type terminal*.

A05356, 18:64-A05357, 19:1 (emphasis added).

Significantly, Gursahaney also described the data traffic to the personal computers operating through terminal emulation as to and from *terminals* -- not as data records sent to and from personal computers as required by the claims of the '953 patent:

27

Host application programs which ***must interface with a 3270-type terminal transmit*** a screen's worth of display ***data to the terminal*** and receive back a screen's worth of display data ***from the terminal***, without the requirement ***for the terminal*** performing sophisticated processing steps on the data, other than the alteration of fields within menus which are represented by the display data.

A05355, 16:18-24 (emphasis added).

Likewise, another CallCoordinator references made clear that the agent's

workstations ***communicates to the Host computer as terminals***:



Figure 1. Message Flow Through CallPath SwitchServer/2

Figure 1 shows how the CallPath SwitchServer/2 enables a telephony system to be integrated with a ***host computer***. ***At the user's workstation, a terminal is linked to a host computer***, and a telephone is linked to the switch. The switch and ***host computer communicate*** not only with the telephone and the ***terminal***, respectively, but also with one another through CallPath SwitchServer/2 . . . . CallPath SwitchServer/2 filters messages from the switch and forwards only those messages that the host computer has requested.

A09136 (emphasis added).

Thus, the inventors of Gursahaney themselves viewed and disclosed to persons of ordinary skill in the art and the public that personal computers operating through terminal emulation in the CTI system were terminals and not personal computers. There was no disclosure to the public that they were in possession of a CTI system that used personal computers not operating as terminals.

The fact that the prior art authors believed that the workstations were terminals in the CTI system was probably the best evidence that the authors of these references never believed they were in possession of the inventions set forth in the claims of the '953 patent. *See e.g., Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1369 (Fed. Cir. 2007) ("In order to anticipate, the reference must place a person who has ordinary skill in the field of the invention, in possession of the invention."); *Beckman Instruments*, 892 F.2d at 1550 ("References relied upon to support a rejection for obviousness must provide an enabling disclosure. That is to say, they must place the claimed invention in the possession of the public.").

In addition, persons of ordinary skill in the art at the time of the invention and even today would not believe that the definition of personal computer encompassed terminals. Although they come under the rubric of computing devices, personal computers and terminals were viewed as mutually exclusive because of the differences in functionality. *See, e.g.*, A09118. Thus, based upon

29

these contemporary sources, a person of ordinary skill in the art would not believe that a device operating as a terminal (*viz.*, a terminal) was within the meaning of the personal computer.

> e.    *The Board Has Impermissibly Re-Written*
> *Prior Art References To Include An Invention*
> *That Was Never Conceived, Appreciated*
> *Or Disclosed By The Prior Art Authors*

The Board's conclusion that "personal computers" encompassed devices operating as terminals, and thus these prior art references anticipated claim 1 improperly placed an invention into the hands of prior art authors who never conceived, appreciated or disclosed the full scope of the invention of claim 1.

It is axiomatic that conception requires a definite and permanent idea of the **complete** and operative invention. *See Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1206 (Fed. Cir. 1991) (emphasis added); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986). Further, conception requires the inventor to actually appreciate the full scope of his invention and that it would be operative. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1063-64 (Fed. Cir. 2005) ("[C]onception requires that the inventor appreciate that which he has invented. . . . The priority determination requires evidence that the inventor actually first made the invention, and that he **understood his creation to have the features that comprise the inventive subject matter at bar**.") (emphasis added); *see also Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1358 (Fed.

30

Cir. 2010) (*en banc*) (inventor must "conceive of the complete and final invention with all its claimed limitations"); *Fiers v. Sugano*, 984 F.2d 1164, 1171 (Fed. Cir.1993) ("[O]ne cannot describe what one has not conceived.").  In addition, "an accidental and unappreciated duplication of an invention does not defeat the patent right of one who, though later in time, was the first to recognize that which constitutes the inventive subject matter." *Silvestri v. Grant*, 496 F.2d 593, 597 (CCPA 1974).

It is also well-accepted that for a reference to anticipate the disclosure must "teach those skilled in the art how to make and use the ***full scope of the claimed invention*** without undue experimentation." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1378 (Fed. Cir. 2009) (emphasis added); *see also Verizon Services Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325 (Fed. Cir. 2010); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003).

It is uncontested that the authors of Gursahaney and the Administrator's Guide believed that the personal computers functioning as terminals through terminal emulation were ***terminals*** in the system, and that the CTI systems that they were disclosing were designed to work for legacy (i.e. Host/Terminal) software.  A05349-A05351; A04305.  There was no disclosure of personal computers actually operating as personal computers and interacting with a LAN

31

server and its associated database. While the prior art CTI system of Gursahaney and the Administrator's Guide ended up with the same result in retrieving customer data, the claims of the '953 patent taught a specific architecture that was not disclosed in either of these references. Thus, these authors did not conceive of a CTI system that employed personal computers operating as personal computers interacting with a server.

Further, the disclosures of Gursahaney and the Administrator's Guide were clearly not enabled for the full scope of the invention of claim 1. Gursahaney and the Administrator's Guide did not disclose CTI systems that employed personal computers operating as personal computers and personal computers interacting with a LAN server. A05349-A05351; A04305.

Even under the "broadest reasonable interpretation" of the claims, the Board has improperly expanded the disclosure of these references over 20 years later and placed an invention into the hands of prior art authors who did not conceive, appreciate or describe the CTI system of the claims of the '953 patent. *See e.g., Pharmastem*, 491 F.3d at 1369 ("In order to anticipate, the reference must place a person who has ordinary skill in the field of the invention, in possession of the invention."); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1550 (Fed. Cir. 1989) ("References relied upon to support a rejection for obviousness must provide an enabling disclosure. That is to say, they must place

32

the claimed invention in the possession of the public."). "To imbue one of ordinary skill in the art with knowledge of the present invention, when no prior art reference or references of record convey or suggest that knowledge is to fall victim of the insidious effect of hindsight syndrome, wherein that which only the inventor taught is used against the teacher." *W.L. Gore & Assoc. v. Garlock. Inc*., 721 F.2d 1540, 1553 (Fed. Cir. 1983). The prior art must to be judged based on a full and consideration of what that art teaches, not by using applicants' invention as a blueprint for gathering and modifying various bits and pieces of the prior art to improperly reconstructing applicants' invention.

This is exactly the "hindsight syndrome" that the Board fell victim to. Therefore, it was legal error to put possession of an invention that even the prior art authors never conceived, appreciated or disclosed and, in fact, described away from. For this reason the Board's decision affirming the rejection requires reversal.

### f.    The Board Should Have Used The Well-Known And Common Meaning Of "Personal Computer"

It is an axiom of claim construction that absent specific meaning set forth in the specification the common meaning of the claim limitation should be used. *Phillips*, 415 F.3d at 1312-13. The Examiner did not contest that the specification of the '953 patent does not contain any specialized meaning for "personal computers." Thus, the ordinary meaning of this claim limitation should have been

used.  The District Court in the related litigation after reviewing common

definitions of personal computers in technical dictionaries defined "personal

computer" as:

> A desktop, floor-standing, or portable microcomputer that usually
> consists of a system unit, a display monitor, a keyboard, one or more
> diskette drives, internal fixed storage, and an optional printer. A PC is
> designed to give independent computing power to a single user.

*CSB-Sys.*, 2011 U.S. Dist. LEXIS 83462, at *13-14.

Had the Board properly employed the ordinary meaning of "personal

computers" it would be readily apparent that the devices operating as terminal in

the prior art CTI systems would not meet this limitation because they do not have

"independent computing power."  The flow of data records and requests is strictly

controlled by the Host computer.

> g.    *The Third Party Requester Admitted That*
>       *Claim 1 Was Client Server With The Personal*
>       *Computers Making Client Requests For CTI Data*

Third Party Requester and Mr. Gursahaney, its expert who was also the

author of one of the prior art references, testified during the District Court

litigation that the '953 patent disclosed a Client/Server EDP-CTI architecture and

not a Host/Terminal EDP-CTI architecture.  For example, Mr. Gursahaney testified

that the claims of the '953 patent disclosed a client/server architecture with PCs

interacting with a server:

Q. Do you understand -- or do you understand that Dr. Gaynor [CSB's

34

expert] has given his opinion that the patent in suit, the 953 patent, is directed to what he calls his client server architecture, rather than what he calls host terminal architecture?

A. Yes, *I would agree with that*.

Q. Do you understand what he means by client server architecture?

A. Yeah, his description of client server architecture implies that there's a PC involved that gets CTI information.  In his case, he identified it as caller ID. And he uses that to query a host computer of some sort, a LAN server, as referenced in the patent, to do a screen pop. *So yes, it is described as a client server architecture, it would be a client server architecture*.

Q. I'm sorry, and you're referring to the patent?

A. *The patent does describe a client server architecture.  It refers to PCs and servers*.

Q. In your opinion does it -- do you agree with Dr. Gaynor that it does not describe a host terminal system?

A. Yes, I agree it doesn't describe a host terminal system ….

A09010-11 (emphasis added).

Thus, again the prior art author agreed that claim 1 disclosed a client/server architecture where the PC makes a client request for caller ID data.  Further, the prior art author agreed that claim 1 was different than a host/terminal architecture.

In addition, at the Markman hearing Third Party Requester's counsel agreed that the '953 patent disclosed a Client/Server EDP-CTI architecture stating "[y]ou've heard a lot today about what the ['953] patent is all about, and I think after today we are all in agreement that the patent is directed to a client server architecture." A09045.  Further, in Third Party Requester's post-Markman brief

35

Third Party Requester reiterated that the '953 patent taught a Client/Server EDP-CTI. A0909.

Thus, even the prior art author and the Third Party Requester admitted that the personal computers had to make client requests for CTI data to meet the definition which a device operating as a terminal does not.

2.    The Board's Construction Of
       "LAN Server" Was Not Reasonable

The Board also rejected the District Court's construction and contemporaneous dictionary definitions of the term "LAN server."  A00019-A00020.  Instead, the Board found that it was only necessary to find a device labeled a "server" somewhere in the reference, and it was not necessary to determine if the alleged analogous device met the requirements of this term as construed. *Id.*  This was legally erroneous for at least two reasons.

First, regardless of the claim construction standard, anticipation and obviousness required the comparison of the prior art to the properly construed claims. *See Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1302 (Fed. Cir. 2011) ("Anticipation and obviousness require the court to compare the properly construed claims to the available prior art.") (citation omitted); s*ee also Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 718 (Fed. Cir. 1998) ("Assuming for sake of argument that the Example 3 patch would deliver 2.0 mg/day, there is no anticipation because claim 14, as construed,

requires that the patch be capable of delivering at least 2.5 mg/day.").  Thus, the Board had to find all the features of the construed claim term in the alleged analogous structure.  Further, it required the alleged analogous structure to be found as arranged in the claim.  *See, e.g., Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334-35 (Fed. Cir. 2008) ("But disclosure of each element is not quite enough-this court has long held that '[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim.'").  Because the Board admittedly only looked for labels, and did not determine if the construed features were present, the Board's invalidity analysis was erroneous and should be reversed.

Second, had the Board used the proper construction of "LAN server" it would have been clear that the prior art references do not meet this limitation.  The District Court construed "server" as "a computer on the Local Area Network (LAN) that responds to requests from telephone software and provides shared services to the personal computers/workstations in response to queries from clients."  *CSB-Sys. Int'l, Inc. v. SAP America, Inc.*, C.A. No. 10-2156, 2011 U.S. Dist. LEXIS 83462, *15 (E.D. Pa. 2011).  Further, the district court citing to column 2 line 65 to column 3 line 14 of the '953 patent found that "[t]his language acknowledges that a client using a personal computer can make specific requests via the integration element to which the LAN server – shown in Figure 1 as

connected to the integration element – will respond." *Id.* at *42-43.

Other courts have found that "server" has a well-known meaning including responding to client requests. *See, e.g., Visto v. Microsoft, C.A.,* No. 2:05-CV-5462007, U.S. Dist. LEXIS 97893, *30 (E.D. Tex. Aug. 28, 2007) ("The term 'server' is construed as 'a computer or program that responds to commands or requests from a client. A client is a computer or program that sends commands or requests to the server.'").

It is uncontested that the Board did not find that the alleged "servers" of the prior art responded to requests from client. A00019-00020. In fact, the Board did not determine if the alleged analogous structure met any of the functional limitations. Thus, the Board's rejection is not supported by substantial evidence.

## III.    CLAIM 1 WAS NOT ANTICIPATED BY HEINZELMANN

The Board affirmed the Examiner's anticipation rejection of claim 1 based Heinzelmann. A00020-22. The Board's rejection was erroneous because it was not supported by substantial evidence and failed to employ the proper anticipation standard. For these reasons the Board's rejection should be reversed.

Heinzelmann was vastly different from claim 1 of the '953 patent. Claim 1 disclosed a CTI system in which the telephone data was used to automatically retrieve from a database information about the caller. In contrast, Heinzelmann only disclosed a technique for providing phone management services to a personal

38

computer – not an integrated EDP and telephone system, i.e. CTI system:

> The present invention relates to a technique for providing phone management (PM) services to personal computers (PCs) which are end users of a PC-only Local Area Network (LAN) by logically associating voice terminals of a separate voice and data Network, e.g., a Private Branch Exchange (PBX), with the PCs.

A04974, Abstract.

The techniques described in Heinzelmann form the basis of personal computers to telephone integration where computer users can control a telephone device directly from their personal computer.  A CTI system such as that of claim 1 was not disclosed.

### A.    Heinzelmann Failed To Meet The "LAN server" Limitation Of Claim 1

The Examiner's finding that Heinzelmann met the "LAN server" limitation was erroneous because the Examiner never made any findings showing how any alleged analogous structure of Heinzelmann met the claim construction of "LAN server." A11236.  Instead, the Board stated, contrary to the law regarding anticipation, that all it had to find was a server and did not need to determine if that server was arranged as in the claim or whether it met the construction of "server" of claim 1.  A00019-A00020; A11236.  Thus, the Board's finding was erroneous.

Even assuming *arguendo* that it was inherent that servers responded to requests from clients, the Board failed to show that the "server" of Heinzelmann (i.e. the "Phone Management server"), responded to the "personal computers" of a

CTI system of claim 1, *i.e.*, to the personal computers integrated with the telephone extensions. It is uncontested that the Board never determined if this alleged analogous structure responded to requests from the plurality of personal computers of an integrated CTI system as claimed in claim 1. Thus, the Board's rejection was not supported and should be reversed.

Further, the Board was required to find the alleged analogous structure to the "server" of the claims to be found ***as arranged in the claim*** and not just a server somewhere in the prior art reference. *See, e.g., Finisar,* 523 F.3d at 1334-35 (emphasis added); *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) ("Because the hallmark of anticipation is prior invention, the prior art reference - in order to anticipate under 35 U.S.C. § 102 - must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements as arranged in the claim.") (internal quotation marks omitted)).

In fact, any "server" of Heinzelmann would not be as arranged as in claim 1 because Heinzelmann did not teach a CTI system. Heinzelmann only taught a system to allow personal computers to make and receive telephone calls:

> The present invention relates to a technique for providing phone management (PM) services to personal computers (PCs) which are end users of a PC-only Local Area Network (LAN) by logically associating voice terminals of a separate voice and data Network, e.g.,

40

a Private Branch Exchange (PBX), with the PCs.

A04097.

Significantly, not only did the Board not make any of these necessary

findings, but it also admitted that Heinzelmann did not disclose the ability of PCs

to make requests to any server which responds to requests from clients:

> However, Heinzelmann does not specifically state that the personal
> computers use this information to send a request to the LAN server.
> While the personal computers communicate with a server, i.e. the
> Phone Management Server, the examiner has relied upon this server
> as the "integration element" and thus the Phone Management Server
> cannot be used to also correspond to the claimed LAN Server.

A09974.

Thus, by the Board's own admission, no component of Heinzelmann's CTI

system met the definition of LAN server of claim 1, i.e., respond to requests from

client devices.  For this reason alone, the Board's decision was not supported by

substantial evidence and should be reversed.  *See In re Turlay*, 304 F.2d at 899 (A

reference relied on to prove unpatentability must be so clear and explicit that those

skilled in the art will have no difficulty in ascertaining its meaning).

## B.    Heinzelmann Failed To Meet The "EDP System" Limitation Of Claim 1

The Board's finding that Heinzelmann disclosed the EDP system limitation

of claim 1 was not supported by substantial evidence and should be reversed.  The

District Court had construed EDP System to include a "shared database."  The

Examiner and the Board did not contest this construction.  A00022.  However, the

Examiner and the Board found that Heinzelmann disclosed a shared database

because it disclosed a LAN. *Id.*  This was legal error because inherent anticipation

required that the "missing characteristic is necessarily present, or inherent, in the

single anticipating reference." *Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339,

1348 (Fed. Cir. 2004) (citation omitted).  Furthermore, probability, possibility, or

capability cannot prove inherent anticipation. *See Motorola Mobility, LLC v. Int'l

Trade Comm'n*, 737 F.3d 1345, 1350 (Fed. Cir. 2013).  If this was alleged to be

common knowledge then the Board was required to place this into the record so

that an appellate court could review.  *Gechter v. Davidson*, 116 F.3d at 1458.

However, the Examiner and the Board never pointed to any structure

representing the "shared database" and did not make any findings that a shared

database is necessarily present in a LAN.  A00022. Thus, the Board's rejection was

unsupported and should be reversed.

### C.    Heinzelmann Failed To Meet The "At Least One Connection Element Selected From The Group Consisting Of An SDLC Connection Element And An ISDN Connection Element" Limitation Of Claim 1

The Board's determination that Heinzelmann disclosed an ISDN or SDLC

connection element as arranged in the claims of the '953 patent was not supported

by substantial evidence.  Claim 1 explicitly required (1) an ISDN or SDLC

connection element arranged between the intelligent telephone system and the

integration element and (2) an ISDN or SDLC connection element that receives and transmits signals between the intelligent telephone system and the integration element.  A00035 (Claim 1 "integration element receiving signals via at least one connection element selected from the group consisting of an SDLC connection element and an ISDN connection element via a second line from said at least one telephone network via said intelligent telephone system and sending back signals to said at least one telephone network").

Heinzelmann did not disclose (1) an ISDN or SDLC connection element and (2) does not disclose such connection element arranged between the intelligent telephone system and the integration element.

The Board maintained that Heinzelmann disclosed a SDLC or ISDN connection element between an integration element and the intelligent telephone system. A00021-A00022.  The Examiner argued that because the signaling protocol between the telephone extensions and the PBX Network Hub was CCITT-defined Q.931 protocol then Heinzelmann taught internal ISDN switches.  A09807. However, in arriving at this conclusion the Examiner interposed several unsupported statements.

The first assumption made by the Examiner was that because Heinzelmann can use a CCITT-defined Q.931 protocol between the telephone extensions and the PBX Network Hub – not between the intelligent telephone system and the

43

integration element as set forth in the claims - Heinzelmann also taught internal

ISDN switches.  This was pure conjecture on the part of the Board and no support

in Heinzelmann or other references was provided.  Anticipation "cannot be

predicated on mere conjecture respecting the characteristics of products that might

result from the practice of processes disclosed in references." *W.L. Gore*, 721 F.2d

at 1554 (Fed. Cir. 1983); *see also In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981)

(Inherent anticipation "may not be established by probabilities or possibilities").

The second assumption made by the Examiner was that an ISDN switch

equaled a connection element.  The Examiner provided no support for this

conclusion from Heinzelmann or other prior art in violation of M.P.E.P. § 2131.

The third assumption was that because there was an ISDN connection

element between the telephone extensions and the PBX Network Hub, the "PBX

hub can use ISDN signaling protocols and can connect across the network to other

ISDN switches as shown in Figure 1."  A09807.  This also was not supported.

Even if the PBX Network Hub could use ISDN signaling in communicating with

the telephone extensions this did not mean that it can use it to communicate with

other components.  One of the functions of a PBX is to translate between

incompatible components.  The claims required an ISDN connection element

between the intelligent telephone system and the integration element, not between

the telephone extensions and the PBX.  Thus, even if Heinzelmann showed an

44

ISDN connection element (which it does not), the ISDN connection element was between the telephone extensions and the PBX and not between the integration element and the PBX as required by the claims of the '953 patent.

The Board also argued that because the phone management server had a Digital Communications Protocol interface (DCPI) and column 6, lines 3-8 disclosed a CCITT-defined Q.931 protocol, Heinzelmann taught an ISDN connection element on the integration element.  A00022.  The Board's argument was misplaced.  The passage relied upon by the Board only stated that the communication between the telephone extensions and PBX in an ISDN network can use CCITT-defined Q.931 protocol:

> The signaling messages that propagate between the DCP voice terminals 23 and PBX hub 22 are collectively termed the DCP signaling protocol. In an Integrated Services Digital Network (ISDN), such signaling protocol would be the CCITT-defined Q.931 protocol.

A04980.

Nothing is this passage referred to the signaling protocol between the PBX and the phone management server as required by claim 1.  In fact, there was nothing in Heinzelmann that disclosed an ISDN signaling protocol between the PBX and the phone management server or with other networks in the system as alleged by the Examiner.  *See Finisar*, 523 F.3d at 1334-35 ("'[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim.'") (citation omitted).

45

Because these assertions were unsupported they did not meet the burden under Section 102. *See* MPEP § 2131; *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987) ("'The identical invention must be shown in as complete detail as is contained in the ... claim.'"). Moreover, "[e]very element of the claimed invention must be literally present, ***arranged as in the claim***." *Id.* (emphasis added). In the present case, the Board's finding was not supported by substantial evidence. The Board and the Examiner merely made conclusions without any support in Heinzelmann or any other reference. *See* MPEP § 2131.01.

Therefore, the Board failed to meet its burden of persuasion to show that Heinzelmann disclosed or taught an ISDN or SDLC connection element arranged between the intelligent telephone system and the integration element.

Thus, for the reasons set forth above, the Court should reverse the rejection of claim 1.

## IV.    CLAIM 1 WAS NOT ANTICIPATED BY GURSAHANEY

The Board's rejection of claim 1 as anticipated by Gursahaney was improper because the Board and Examiner used the wrong claim construction for a "personal computers" and "LAN server." Moreover, the Board's rejection failed to meet the burden necessary for a Section 102 rejection, and thus its rejection was erroneous. *See* MPEP § 2131.

**A.    Gursahaney Failed To Meet The "A Plurality Of Personal Computers" Limitation Of Claim 1**

The Board held that a workstation operating as a terminal in a functioning system was a personal computer in a CTI system of the claims of the '953 patent. A00024.  As stated above, the Board's broadening of the scope of "personal computers" to encompass terminals was not supported and improperly placed an invention into hands of prior art authors who neither conceived, appreciated nor disclosed the full scope of the invention of claim 1.  In fact, the inventors of Gursahaney referred to the workstations operating through terminal emulation as terminals in the CTI system of their invention.

> The memory 104 in the ***workstation*** 100 includes a multi-tasking operating system 124 which can be the OS/2 Extended Edition by IBM. The memory 104 also includes the ANI buffer 126. The memory 104 also includes a terminal emulation program 128, which can be for example the 3278/79 Emulation Control Program by IBM. The ***3270 data stream is designed for communications between a host computer and a "dumb terminal***," such as an IBM 3278, characterized hereinafter as a 3270-type terminal. The path between the host computer ***and the 3270-type terminal*** [workstation] is usually through a communications control unit, such as an IBM 3274. Host application programs which must interface with a ***3270-type terminal transmit*** a screen's worth of display ***data to the terminal*** and receive back a screen's worth of display data ***from the terminal***, without the requirement ***for the terminal*** performing sophisticated processing steps on the data, other than the alteration of fields within menus which are represented by the display data.

A05355, 16:6-23) (emphasis added).

> FIG. 6 also shows a detailed illustration of the memory 204 for the host A computer 200. In a telephone order entry application being

described, the host A computer 200 will be running a data base manager program 212 for the purpose of storing and accessing a data base of customer information. When a telephone call is received by the PBX 120, the workstation 100 will interact with the host A computer 200 in a *first terminal session*, to access the customer data corresponding to the ANI data received from the PBX 120. The data base manager 212 is a pre-existing program which was designed to *interface with a 3270-type terminal in a 3270 data stream operation*, for example.

A05356, 17:10-23 (emphasis added).

Significantly, Gursahaney described the sending and receiving of data records to the personal computers operating through terminal emulation as to and from terminals -- not to and from personal computers as required by the claims of the '953 patent:

> Host application programs which must interface with a 3270-type terminal transmit a screen's worth of display data to the terminal and receive back a screen's worth of display data from the terminal, without the requirement for the terminal performing sophisticated processing steps on the data, other than the alteration of fields within menus which are represented by the display data.

A05356 16:18-24.

Thus, despite the fact that the authors of Gursahaney believed the PCs were terminals in the functioning CTI system the Board has placed into the hands of prior art authors a CTI system using PCs and servers that they did not conceive, describe, enable or even appreciate. This was erroneous. *See e.g., Pharmastem Therapeutics,* 491 F.3d at 1369 ("In order to anticipate, the reference must place a person who has ordinary skill in the field of the invention, in possession of the

invention."); *Beckman Instruments,* 892 F.2d at 1550 ("References relied upon to support a rejection for obviousness must provide an enabling disclosure. That is to say, they must place the claimed invention in the possession of the public.").

Therefore, the Examiner's rejection was improper and the rejection should be reversed.

## B.    Gursahaney Failed To Meet The "LAN server" Limitation Of Claim 1

The Board's finding that Gursahaney met the "LAN server" limitation of claim 1 was not supported and was not legally incorrect.  A00024.  Significantly, the Examiner admitted that Gursahaney did not disclose a "server."  A11247. However, the Board upheld the Examiner's rejection stating that "Gursahaney teaches a host computer that performs all the functions Appellant contends are necessary for a computer to be a server.  A00023.  This was not true, irrelevant and amounted to legal error.

First, a person of ordinary skill in the art at the time of the '953 patent would never believe a Host computer operating in a Host/terminal system was a server in a client/server architecture.  Host computers and servers were mutually distinct terms of art in the computer field.  Thus, although their functions may be similar, persons of ordinary skill in the art would not believe a Host computer was within the meaning of server.  In addition, the Board never presented any support for its assertion that a person of ordinary skill in the art would equate a Host computer

49

with a server. A00023.

Moreover, the Board's view was contradicted by contemporaneous evidence. The definition and usage of the term "Host computer" by IBM and the Gursahaney authors at the time of the invention of the '953 patent showed a clear distinction between a controlling Host Computer and a server which serves another device (i.e. a client). A01154; A11150. For example, IBM's definition of "host computer" in a CTI system at the time of the invention was "[t]he primary or controlling computer in a multiple computer installation." A11030. As the definition makes clear a host computer was defined by the functionality of controlling the system. Other definitions made clear that interaction with a Host computer was through terminal emulation. *See* A10764 ("A computer to which one connects using a terminal emulator").

> Host computer. A computer that provides customer application and database services. In a CallCoordinator/2 system, the host computer can be a System/390, System/370, Application System/400, System/36, or Personal System/2, **communicating with CallCoordinator/2 through 3270 or 5250 emulation or by a device driver**.

A04474 (emphasis added).

Likewise, Gursahaney clearly did not believe a Host computer and server were interchangeable. The term "host" appears in Gursahaney at least 613 times, the term "host computer" appears at least 106 times and the term "server" *never* appears in Gursahaney. A05325-A05367.

In contrast to the definition of a Host computer as the controller of the system, definitions of server made clear that a server was subservient and provided services at the request of clients. *See, e.g.*, A10762 ("A computer which provides some services to other computers connected to it via a network."); A10766 ("a computer in a network that is used to provide services"). These definitions were the accepted definitions of Host computer and server at the time of the invention. Therefore, persons of ordinary skill in the art would not believe the Host computer of Gursahaney met the server limitation of the claims.

Because the Board never provided any support for its finding that a host computer was a server in claim 1 and given that the contemporaneous evidence contradicted the Board's view, the Board's finding was not supported by substantial evidence and should be reversed.

Second, neither the Board nor the Examiner has ever showed whether the Host Computer of Gursahaney responded to requests "from client devices." A00023. The terminals were not client devices as the Examiner contends. Persons of ordinary skill in the art would never equate a terminal with a client device and the Examiner did not presented any support for his argument that a terminal was a "client device." In fact, a terminal connected to a host computer was a "dumb" terminal and did not do any requesting.

Significantly, the Host computer of Gursahaney cannot be the LAN Server

51

of claim 1 because the Host computer of Gursahaney by definition controlled the system and dictated to the terminals through screen images.  A04474; A04858.  In contrast, the claims of the '953 patent required personal computers interacting with a server- a classic client/server architecture.  Persons of ordinary skill in the art would understand the mutual exclusivity of these two disclosed CTI systems.

For the reasons set forth above, the Board's decision was not supported by proper findings and should be reversed.

## V.    CLAIM 1 WAS NOT OBVIOUS OVER GURSAHANEY IN VIEW OF DORST

Because the Board did not use Dorst for the "personal computers" or "LAN server" limitation (A00024-A00026), for the same reasons as set above, the Board's rejection under Section 103 was not supported by substantial evidence and must be reversed.

## VI.    CLAIMS 7-8 WERE NOT OBVIOUS GURSAHANEY IN VIEW OF DORST AND FURTHER IN VIEW OF OKATA OR KOSHIISHI

The Board did not use Dorst, Okata or Koshiishi to meet the "personal computers" or "LAN server" limitations. A00026-A00027.  For the same reasons as set forth above for Gursahaney the Board's rejection was not supported by substantial evidence and should be reversed.

## VII.    CLAIM 1 WAS NOT OBVIOUS OVER THE CALLCOORDINATOR ADMINISTRATOR'S GUIDE IN IN VIEW OF GURSAHANEY

The Board affirmed the Examiner's rejection of claim 1 under 35 U.S.C.

52

103(a) as being unpatentable over the Administrator's Guide in view of Gursahaney. A00026-A00029. The Board's rejection was improper because the Board failed to properly construe the key claim terms and failed to make findings that alleged analogous structure met the claims limitations as construed.

### A.    The Administrator's Guide Is Not Prior Art

As an initial matter the Board's use of the Administrator's Guide was erroneous because there was no evidence that it was authentic and that it qualified as prior art. A00027-00029. There are several requirements for a document to be considered and used as prior art against an application or patent in reexamination. The document has to be authentic in that it is genuine and is what it is and it has to be a printed publication that was accessible to a person of ordinary skill in the art without extraordinary means. Federal Rule of Evidence 901 ("FRE").

### 1.    Proper Foundation For The Administrator's Guide Was Absent

Neither the Board nor the Third Party Requester has ever provided any foundation for showing the authenticity and genuineness of the Administrator's Guide. *See, e.g.*, FRE 901. The Administrator's Guide was clearly incomplete and contains a fax line showing that it was not ordinal. A04289-A04310. The last page showed that it was faxed by unknown person at IBM to an unknown person named "Simon Davies." A04310. No date was presented for the fax and no reason or purpose was disclosed for the sending of this document. *Id.* Further, the name

"Simon Davies" never appeared in the litigation or the reexamination, and no information was ever presented about this person.

Significantly, despite years of search for this document by both CSB and Third Party Requester in the litigation, this document was never located even in IBM's own archive. A09104-A09114. Likewise, neither the proponents of this document (i.e. Third Party Requester and Examiner) nor the Board ever presented any support for where this document was found or could be found. Thus, the purported photocopy of this "prior art" had no indicia of reliability or authenticity.

The Board relied upon *In re NTP, Inc*., 654 F.3d at 1296, to find that CSB had the burden of persuasions and production regarding *disproving* the authenticity of the Administrator's Guide and failed to carry its burden. A00027. This was erroneous. *See In re Wyer*, 655 F.2d 221, 227 (CCPA 1981). The Board and the Examiner had the initial burden to prove this document was authentic, and only then did the burden of production pass to CSB. *In re NTP, Inc*., 654 F.3d at 1295. Because the Board never met its burden the Board's requirement that CSB disprove the authenticity was improper.

Moreover, the factual situation in *In re NTP* actually contradicts the Board's finding that the Administrator's Guide was authentic and qualified as prior art. In *In re NTP* the Third Party Requester disclosed that the reference, Telenor, was located and obtained from the "Norwegian University of Science and Technology

(Library) in Trondheim, Norway." *Id.* In addition, "[e]ach of the volumes of Telenor was marked as received and catalogued on a date more than one year prior to the critical date of the patents at issue." *Id.* Significantly, there was testimony to the Board proving the existence of Telenor and its availability to the interested public. *Id.* First, the Director of the Library submitted a "letter" that "detailed its procedures for receiving, date stamping, and cataloguing documents at the time the Library received Telenor." *Id.* Second, a Swedish patent attorney testified that a search in 1989 at the Library would have uncovered Telenor. *Id.* Thus, there were at least three sources of extrinsic evidence regarding the authenticity and qualification as prior art for Telenor.

In contrast, there was no evidence submitted by the Third Party Requester or Examiner regrading where the Administrator's Guide was found and whether it was authentic. Further, there was no outside evidence such as from a custodian that it could have been located and found by interested persons. In fact, the Board admitted that several searches of places it likely could have been found, including IBM's own archive, did not turn up the Administrator's Guide. A00028. Because it cannot be found at places where it normally would be found the reliability of this document was highly suspect, and the Board failed to carry its burden regarding the use of the Administrator's Guide as evidence.

Because the proper foundation was not established for the Administrator's

55

Guide it use as evidence to support an obviousness rejection was in error and the

rejections based upon this document should be reversed.

2.     The Administrator's Guide Did
       Not Qualify As A Printed Publication

In addition, the Board did not meet the burden to prove that the

Administrator's Guide qualified as prior art.  "The statutory phrase 'printed

publication' has been interpreted to mean that before the critical date the reference

must have been sufficiently accessible to the public interested in the art;

dissemination and public accessibility are the keys to the legal determination

whether a prior art reference was 'published.'" *In re Cronyn*, 890 F.2d 1158, 1160

(Fed. Cir. 1989).  A reference is "publicly accessible" prior art "'upon a

satisfactory showing that . . . [it] has been disseminated or otherwise made

available to the extent that persons interested and ordinarily skilled in the subject

matter or art exercising reasonable diligence, can locate it.'" *SRI Int'l, Inc. v.*

*Internet Sec. Sys.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008) (citation omitted).

The Board relied exclusively on a "March 1992" date printed in the

Administrator's Guide for its finding that it qualified as printed publication and that

it was accessible to the public.  A00028-A00029; A04290.  However, there was no

evidence regarding the meaning of this date.  *Id.*  At best, this date showed when

the material was written - not when it was available to the public.  There was no

showing of whether this document was actually available in March 1992.  There

56

was no testimony such as from an IBM custodian or a customer who ordered this particular document that the Administrator's Guide was actually available prior to the priority date for the '953 patent. *Compare with Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 974 (Fed. Cir. 2010) (Witness testimony that catalog was available prior to critical date and seen by 150-200 people).

Therefore, the Board failed to show that the Administrator's Guide qualified as prior art, and its use in an obviousness rejection was erroneous.

**B.    The Administrator's Guide In Combination With Gursahaney Failed To Meet The "A Plurality Of Personal Computers" Limitation**

Even if the Administrator's Guide could be used to support a Section 103 rejection, neither Gursahaney nor the Administrator's Guide disclosed the "personal computer" limitation. As stated above, the Board held that any mention of personal computer in the reference would anticipate this limitation even if the personal computer was converted to a terminal when in the CTI system. Thus, the Board found that this limitation was met because the references mentions that personal computers operating through terminal emulation were used. A00029. This was erroneous for several reasons. First, persons of ordinary skill in the art would not consider a functional terminal a personal computer in the claims of the '953 patent. Second, the Board should have analyzed the nature of the alleged analogous structure in the CTI system and not out of the box when purchased. Third, the Board's determination that personal computers operating through

57

terminal emulation were personal computers of the claims was contradicted by the prior art relied upon by the Board which called these devices terminals. Fourth, by holding that the Administrator's Guide met the "personal computer" and "server" limitations the placed an invention into the hands of authors who never conceived, appreciated or disclosed the full scope for the invention. A00029. Because the Board's rejection was based upon an erroneous claim construction, the Board's rejection must be reversed as a matter of law.

### C.    The Administrator's Guide In Combination With Gursahaney Failed To Meet The LAN Server Limitation Of Claim 1

The Board's argument that the Administrator's Guide met the LAN server limitation was improper because the Board failed to compare the alleged analogous structure against the limitation as construed. A00029-A00030. Instead the Board relied upon labels to find the "LAN server" limitation met. This is legally incorrect and by itself requires reversal of the rejection based upon the Administrator's Guide in combination with Gursahaney.

Had the Board compared the Administrator's Guide against the proper construction it would be clear that the Administrator's Guide does not disclose a LAN server of claim 1. Figure 1 of the Administrator's Guide shows that the functionality (i.e. a controlling host computer) stays the same no matter what the hardware device on which it resides. A04300. In addition, disclosure in the Administrator's Guide shows that a division between a component's function and

the hardware device on which it resides.  For example, the Administrator's Guide states that the "host application may reside on a PC LAN Server" A04305.  This passage and Figure 1 of the Administrator's Guide shows that there is a strict dichotomy between functionality ("host computer") and the hardware that it may "reside" on ("S/370, AS/400, 3138, PC LAN Server").  A04300; A04305.

Further, the Board improperly expanding the disclosure of the Administrator's Guide and placed an invention into the hands of authors who never conceived, appreciated or disclosed the full scope for the invention.

Therefore, the Administrator's Guide does not meet the "server" claim limitation of the claims of the '953 patent as properly construed and the Examiner's rejection should be reversed.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Appellant respectfully requests that this Court reverse the Board's Decision.

September 14, 2015

/s/ Bruce J Koch
Bruce J. Koch
Thorsten Schmidt
SCHMIDT LLC
560 Lexington Avenue, 16th Floor
New York, New York 10022
Tel.:  (212) 809-1444
Fax:  (212) 983-1554

*Attorneys for Appellant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was

electronically filed with the Clerk of the Court using the CM/ECF electronic

notification system, which will send a notice of electronic filing to the attorneys for

appellee this 14th day of September, 2015, as follows:

> Mr. Thomas W. Krause, Associate Solicitor
> Doctor Amy J. Nelson, Associate Solicitor
> Jeremiah Helm, Esq.
> U.S. Patent and Trademark Office
> Mail Stop 8 – P.O. Box 1450
> Alexandria, VA 22313-1450

> /s/ Bruce J. Koch
> Bruce J. Koch

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 13,728 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

in 14 point Times New Roman.

September 14, 2015                    /s/ Bruce J. Koch
                                     Bruce J. Koch
                                     Attorney for Appellant

# Addendum



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 90/012,210 | 04/25/2012 | 5631953 | SAP-0046 | 3184 |

96538          7590          03/30/2015
Schmidt LLC
560 Lexington Ave
16th Floor
New York, NY 10022

| EXAMINER |
| --- |
| ESCALANTE, OVIDIO |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3992 | |

| MAIL DATE | DELIVERY MODE |
| --- | --- |
| 03/30/2015 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

A00001

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

*Ex parte* CSB-SYSTEM INTERNATIONAL, INC.
Patent Owner and Appellant

————————

Appeal 2014-003666
Reexamination Control 90/012,210
Patent 5,631,953
Technology Center 3900

————————

Before MAHSHID D. SAADAT, MICHAEL J. STRAUSS, and
ROBERT J. WEINSCHENK, *Administrative Patent Judges*.

WEINSCHENK, *Administrative Patent Judge*.


DECISION ON REQUEST FOR REHEARING

Appellant CSB-System International, Inc. ("Appellant") requests
rehearing of the Decision on Appeal mailed July 31, 2014 ("Decision"),
wherein we affirmed the Examiner's rejections of claims 1–8 of U.S. Patent
No. 5,631,953 ("the '953 patent") (*see* Decision 19–20). We refer herein to
Appellant's Appeal Brief filed August 5, 2013 ("App. Br."), the Examiner's
Answer mailed September 18, 2013 ("Ans."), Appellant's Reply Brief filed
November 18, 2013 ("Reply Br."), and Appellant's Request for Rehearing
filed September 30, 2014 ("Reh'g Req."). We reconsidered the Decision in
light of Appellant's arguments in the Request for Rehearing, but, for the
reasons discussed below, we do not modify the Decision.

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

A request for rehearing is limited to matters overlooked or misapprehended by the panel in rendering the original decision. *See* 37 C.F.R. § 41.52. Appellant's arguments do not persuade us we overlooked or misapprehended matters in the Decision, but, for completeness, we address Appellant's arguments in the Request for Rehearing below.

## CLAIM CONSTRUCTION

As explained in the Decision, Appellant acknowledges that the claims of the '953 patent are given their broadest reasonable interpretation consistent with the Specification (Decision 4–5; App. Br. 17).

### *Construction of "Personal Computer"*

Appellant argued in the Appeal Brief the term "personal computer" in claim 1 should be construed to exclude a personal computer operating as a terminal (App. Br. 27–29). In the Decision, we considered Appellant's proposed construction and found it was not supported by the evidence of record (Decision 7–8). In the Request for Rehearing, Appellant urges the same proposed construction for the term "personal computer," and presents additional arguments that were not raised in the Appeal Brief (Reh'g Req. 2–13; App. Br. 27–29). Appellant's additional arguments in the Request for Rehearing are untimely and waived because Appellant does not show good cause as to why those arguments were not presented in the Appeal Brief. *Ex parte Borden*, 93 USPQ2d 1473, 1474 (BPAI 2010) (informative). Further, even if Appellant's additional arguments were presented timely, they are not persuasive for the reasons below.

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Appellant argues we should adopt its proposed construction because the claims of the '953 patent use the term "personal computer," rather than a broader term such as "computing device" (Reh'g Req. 2–4). Appellant's argument is not persuasive. Appellant does not identify any language in the claims of the '953 patent indicating that the term "personal computer" excludes a personal computer operating as a terminal. The claims recite the term "personal computer" broadly without any limitation as to how the personal computer operates, other than to require that the personal computer send and receive data records (App. Br. 94). As explained in the Decision, the evidence of record, including the prior art of record, shows a personal computer operating as a terminal that can send and receive data records (Decision 8). Therefore, the evidence of record does not support Appellant's argument that the term "personal computer" excludes a personal computer operating as a terminal.

Appellant argues a person of ordinary skill in the art in 1993 would not have understood a terminal to be a personal computer (Reh'g Req. 4–11). Specifically, Appellant points to several excerpts from the prior art that use the word "terminal" to refer to a personal computer operating as a terminal (*id.* at 4, 6–7). The evidence cited by Appellant does not show, as Appellant suggests, that terminals and personal computers are "mutually exclusive" (*id.* at 4). Rather, the evidence of record indicates that certain prior art references may refer to a *subset* of personal computers, namely personal computers operating as terminals, using the word "terminal" (*id.* at 4, 6–7). Because, as discussed above, the claims of the '953 patent refer broadly to a "personal computer," we agree with the Examiner that the

3

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

broadest reasonable interpretation of the term "personal computer" consistent with the Specification includes a personal computer operating as a terminal.

Appellant argues that we should adopt the construction of "personal computer" set forth in the claim construction opinion issued by the U.S. District Court for the Eastern District of Pennsylvania ("District Court") in the lawsuit styled *CSB-System International, Inc. v. SAP America, Inc.*, No. 2:10-cv-2156-RB (E.D. Pa.) ("Lawsuit") (Reh'g Req. 11). Appellant's argument is not persuasive. The District Court's claim construction is not binding in this reexamination proceeding. *In re Trans Texas Holdings Corp.,* 498 F.3d 1290, 1297–98 (Fed. Cir. 2007). Further, Appellant does not explain why the District Court's construction is the broadest reasonable interpretation. *See In re Swanson,* 540 F.3d 1368, 1377–78 (Fed. Cir. 2008) (explaining the difference between claim construction in district courts and reexamination proceedings). Also, as explained in the Decision, the District Court did not indicate whether its construction of "personal computer" excludes a personal computer operating as a terminal (Decision 7). In the Request for Rehearing, Appellant points out that the District Court's construction defines a personal computer as having independent computing power, and Appellant argues that a personal computer operating as a terminal does not have independent computing power (Reh'g Req. 11). However, Appellant does not provide any evidence to support that argument. *See id.*; *In re Geisler*, 116 F.3d 1465, 1470 (Fed. Cir. 1997); *In re Pearson*, 494 F.2d 1399, 1405 (CCPA 1974).

4

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Appellant argues there is evidence from the Lawsuit demonstrating that the '953 patent relates to a client-server architecture (Reh'g Req. 11–13). Even assuming *arguendo* the '953 patent generally discusses a client-server architecture, Appellant does not explain why that means the term "personal computer" excludes a personal computer operating as a terminal (*id.*). As explained in the Decision, the Specification of the '953 patent does not indicate that the term "personal computer" excludes a personal computer operating as a terminal (Decision 7–8).

### Construction of "LAN Server"

Appellant argued in the Appeal Brief the term "LAN server" in claim 1 should be construed to mean a computer providing shared services to other components on the Local Area Network ("LAN") and responding to requests from clients (App. Br. 30). In the Decision, we concluded the term "LAN server" did not require express construction (Decision 8–9). In the Request for Rehearing, Appellant argues the term "LAN server" should be construed to include additional requirements not identified previously in the Appeal Brief, specifically, to require that the LAN server "responds to client requests from personal computers integrated with telephone extensions" (Reh'g Req. 13–14; App. Br. 29–33). Appellant's new proposed construction for the term "LAN server" in the Request for Rehearing is untimely and waived because Appellant does not show good cause as to why it was not presented in the Appeal Brief. *Borden*, 93 USPQ2d at 1474. Further, even if Appellant's new proposed construction was presented timely and we were to adopt it, Appellant does not demonstrate any resultant error in the Decision with respect to the prior art rejections for the reasons below.

A00006

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

## PRIOR ART REJECTIONS

### *Anticipation of Claim 1 by Heinzelmann*

Appellant argues we erred because Heinzelmann does not teach a LAN server that responds to client requests from personal computers integrated with the telephone extensions (Reh'g Req. 14–15). Appellant's argument is untimely and waived: (i) because Appellant does not show good cause as to why this argument was not presented in the Appeal Brief, and (ii) because, as discussed above, Appellant's argument regarding the construction of the term "LAN server" is also untimely and waived. *Borden*, 93 USPQ2d at 1474. Moreover, Appellant's argument is not persuasive because we find Heinzelmann *does* teach a LAN server that responds to personal computers integrated with telephones. For example, Heinzelmann discloses:

> **FIG. 1** is a block diagram of a well-known *STAR-LAN PC-based network **10*** and a well-known PBX network **20** which are *connected by* a phone management server device 21 to provide *phone management functionality to network **10*** in accordance with the present invention.

(Heinzelmann 3:8–13) (emphasis added). Thus, Heinzelmann teaches a LAN server in network 10 for responding to personal computers $11_1$ to $11_3$ that are integrated with telephones $23_1$ to $23_4$ via the phone management server device 21 (*id.* at Fig. 1, 3:8–13). In the Request for Rehearing, Appellant does not address that specific teaching in Heinzelmann.

Appellant also argues we erred because the EDP system recited in claim 1 requires a shared database, but Heinzelmann only teaches a LAN server, not a shared database (Reh'g Req. 15–16). Appellant's argument is

6

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

not persuasive. As explained in the Decision, Heinzelmann teaches an AT&T STARLAN PC Local Area Network (PC-LAN) allowing personal computers to access *shared* directories and files (Decision 12). However, in the Request for Rehearing, Appellant does not address the specific teaching of *shared* directories and files in Heinzelmann.

*Anticipation of Claims 1–6 by Gursahaney*

Appellant argues we erred because the personal computers in Gursahaney operate as terminals (Reh'g Req. 16–18). Appellant's argument is not persuasive. As discussed above, the term "personal computer" in claim 1 encompasses personal computers operating as terminals.

Appellant also argues we erred because the host computer in Gursahaney, which was cited by the Examiner as teaching the claimed "LAN server," does not respond to client requests (Reh'g Req. 18–19). Specifically, Appellant argues, in Gursahaney, "a terminal connected to a host computer is a 'dumb' terminal and does not do any requesting" (*id.*). Appellant's argument is not persuasive. As explained in the Decision, Gursahaney teaches the workstations (or clients) on the LAN automatically access host applications running on the host computer via the LAN in order to obtain caller-specific information from the host computer (Decision 13 (citing Gursahaney 4:45–48)). Thus, Gursahaney teaches the workstations request caller-specific information from the host computer, which responds to those client requests. In the Request for Rehearing, Appellant does not address that specific teaching in Gursahaney.

7

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

*Obviousness of Claims 1–8 over IBM and Gursahaney*

Appellant argues we erred because the personal computers in the Administrator's Guide operate as terminals (Reh'g Req. 19–20). Appellant's argument is not persuasive. As discussed above, the term "personal computer" in claim 1 encompasses personal computers operating as terminals.

Appellant also argues we erred because we improperly relied on the User's Guide, rather than the Administrator's Guide cited by the Examiner, as teaching the claimed "LAN server" (Reh'g Req. 20–21). Appellant's argument is not persuasive. In the Decision, we cited to Figure 1 of the Administrator's Guide as teaching the LAN server (Decision 19). Appellant also repeats the argument from its Appeal Brief that the Administrator's Guide does not teach a LAN server because a host application may reside on the LAN server disclosed in the Administrator's Guide (Reh'g Req. 21; App. Br. 90–91). As explained in the Decision, claim 1 recites "a LAN connected to a LAN server" and does not limit the types of applications that can reside on the LAN server (Decision 19). As such, Appellant's argument is not persuasive.

DECISION

We grant the Request for Rehearing to the extent that we reconsidered the Decision in light of Appellant's arguments in the Request for Rehearing, but we deny the Request for Rehearing in that we do not modify the Decision.

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

    Requests for extensions of time in this *ex parte* reexamination

proceeding are governed by 37 C.F.R. § 1.550(c).  *See* 37 C.F.R. § 41.50(f).


<u>DENIED</u>


For Patent Owner:

SCHMIDT LLC
560 LEXINGTON AVE
16TH FLOOR
NEW YORK, NY 10022

For Third Party Requestor:

WOODCOCK WASHBURN LLP
CIRA CENTRE, 12TH FLOOR
2929 ARCH STREET
PHILADELPHIA, PA 19104


kis

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* CSB-SYSTEM INTERNATIONAL, INC.
Patent Owner and Appellant

_____

Appeal 2014-003666
Reexamination Control 90/012,210
Patent 5,631,953
Technology Center 3900

_____

Before MAHSHID D. SAADAT, MICHAEL J. STRAUSS, and
ROBERT J. WEINSCHENK, *Administrative Patent Judges*.

WEINSCHENK, *Administrative Patent Judge*.


DECISION ON APPEAL

Appellant CSB-System International, Inc. ("Appellant") appeals under
35 U.S.C. §§ 134(b) and 306 from a final rejection of claims 1-8. We have
jurisdiction under 35 U.S.C. §§ 134(b) and 306. We heard oral arguments
on June 11, 2014.

We affirm.


STATEMENT OF THE CASE

*Introduction*

We review the Examiner's rejections in light of Appellant's
contentions the Examiner erred. We refer herein to Appellant's Appeal

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Brief filed August 5, 2013 ("App. Br."), the Examiner's Answer mailed

September 18, 2013 ("Ans."), and Appellant's Reply Brief filed November

18, 2013 ("Reply Br.").

U.S. Patent No. 5,631,953 ("the '953 Patent") relates to integrating

electronic data processing ("EDP") systems with telephone systems

connected to a public telephone network (the '953 Patent 1:7-10).

Claim 1, which is illustrative, reads as follows:

> 1.     A circuit arrangement for integration of EDP
> systems in utilization of telephone systems connected to a
> public ISDN or Euro ISDN telephone network, the circuit
> arrangement comprising a plurality of telephone extensions
> which are directly connectable to a telephone network selected
> from the group consisting of a public ISDN telephone network
> and Euro ISDN telephone network; a first line; an intelligent
> telephone system arranged so that said telephone extensions are
> connectable with said at least one telephone network through
> said first line and said intelligent telephone system; a plurality
> of personal computers; an integration element arranged between
> said intelligent telephone system and said personal computers,
> said integration element receiving signals via at least one
> connection element selected from the group consisting of an
> SDLC connection element and an ISDN connection element via
> a second line from said at least one telephone network via said
> intelligent telephone system and sending back signals to said at
> least one telephone network, said integration element also
> sending a data record assigned an appropriate information via a
> third line, via a LAN connected to a LAN server by a fourth
> line and via a fifth line to said personal computers and receiving
> a data record from said personal computers again; a computing
> system; and a software layer arranged so that a conversion of
> the signals into a data record and vice versa is carried by said
> integration element, by said computing system, by said
> software layer and by said at least one connection element with
> an internal software.

2

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Henrik D. Parker ("Third Party Requester") filed a request for *ex parte* reexamination of claims 1-8 of the '953 Patent on April 24, 2012 ("Request").[1] The real party in interest in this reexamination is Appellant (App. Br. 1). The '953 Patent was the subject of litigation styled *CSB-Sys. Int'l, Inc. v. SAP Am., Inc.*, No. 2:10-cv-2156-RB (E.D. Pa.) (App. Br. 1). In that litigation, the U.S. District Court for the Eastern District of Pennsylvania ("District Court") issued an opinion construing certain claim terms in the '953 Patent. *See CSB-Sys. Int'l, Inc. v. SAP Am., Inc.*, No. 2:10-cv-2156-RB, 2011 WL 3240838 (E.D. Pa. July 28, 2011). The '953 Patent expired on May 20, 2014.

## Rejections on Appeal

Claim 1 stands rejected under 35 U.S.C. § 102(e) as being anticipated by Heinzelmann (US 4,866,758; issued Sept. 12, 1989) (*see* Final Rej. 70-77).[2]

Claims 1-6 stand rejected under 35 U.S.C. § 102(e) as being anticipated by Gursahaney (US 5,097,528; issued Mar. 17, 1992) (*see* Final Rej. 77-93).

Claims 1-6 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Gursahaney and Dorst (US 5,046,183; issued Sept. 3, 1991) (*see* Final Rej. 94-95).

---

[1] We do not consider the original request for *ex parte* reexamination filed by the Third Party Requester on March 27, 2012, because the replacement request filed April 24, 2012, supersedes the original request.

[2] We note the Final Rejection (Final Rej. 70), Appeal Brief (App. Br. 16), and Reply Brief (Reply Br. 2) refer to Heinzelmann as U.S. Patent 5,821,877.

3

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Claims 7 and 8 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Gursahaney, Dorst, and Okata (US 4,995,073; issued Feb. 19, 1991) (*see* Final Rej. 96).

Claims 7 and 8 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Gursahaney, Dorst, and Koshiishi (US 4,652,933; issued Mar. 24, 1987) (*see* Final Rej. 96).

Claims 1-8 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over IBM CallPath CallCoordinator/2 System Administrator's Guide (2d ed. Mar. 1992) (hereinafter "Administrator's Guide"), IBM CallPath CallCoordinator/2 User's Guide (1st ed. July 1992), IBM CallPath Services Reference for Northern Telecom Meridian 1 PBX Release 1 (1st ed. Mar. 1992), IBM CallPath Coordinator/2 Server System Administrator's Guide (1st ed. July 1992), IBM CallPath Coordinator/2 Archive System Administrator's Guide (1st ed. July 1992) (collectively "IBM"), and Gursahaney (*see* Final Rej. 96-98).

## CLAIM CONSTRUCTION

In reexamination, claims typically are given their broadest reasonable interpretation consistent with the specification. *In re NTP, Inc.*, 654 F.3d 1279, 1287 (Fed. Cir. 2011). However, in reexamination of an expired patent, a policy of liberal claim construction favoring validity may be warranted because the claims of an expired patent cannot be amended. *Ex parte Papst-Motoren*, 1 USPQ2d 1655, 1656 (BPAI 1986). Here, the '953 Patent expired during this appeal, and Appellant had ample opportunity to amend the claims during the proceedings before the Examiner. Therefore,

A00014

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

the policy of *Papst-Motoren* favoring a liberal claim construction of expired

patents did not apply during the proceedings before the Examiner, and

Appellant does not argue such a policy should apply during this appeal

(App. Br. 17 (acknowledging claims are given broadest reasonable

interpretation consistent with the specification)).

Construction of "Directly Connectable"

Appellant argues the term "directly connectable" in claim 1 should be

construed to mean capable of connecting *without* any intermediary devices

(App. Br. 25).  The Examiner finds the term "directly connectable" in claim

1 encompasses devices capable of connecting *through* an intermediary

device (Ans. 5-7).  We note the District Court construed the term "directly

connectable" to mean "can be directly connected," and thus did not

separately construe the term "directly" in claim 1.  *CSB-Sys.*, 2011WL

3240838, at *9.

We agree with the Examiner the phrase "directly connectable" in

claim 1 encompasses devices capable of connecting through an intermediary

device.  This construction is supported by the Specification of the '953

Patent.  In particular, the Specification states: "the telephone sets . . . are

*directly* connected to the public ISDN or Euro ISDN telephone system (1)

*via* a line (a) and an intelligent telephone installation (3)" (Spec. Abstract

(emphasis added)).  The Specification also states: "[w]hen a caller dials a

competent party . . . the connection is made *directly through* an intelligent

telephone system 3 and a line a to telephone extension 2" (Spec. 4:33-37

(emphasis added)).  Thus, the Specification consistently uses the term

"directly" to refer to connections made through an intermediary device,

5

A00015

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

thereby indicating the Examiner correctly interpreted the term "directly connectable" in claim 1. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

Appellant argues the above-referenced portions of the Specification are not relevant because they discuss direct *connections* and claim 1 recites directly *connectable* (Reply Br. 18). Appellant's argument is not persuasive. Appellant admits the term "directly connectable" in claim 1 refers to the capability of a direct connection (App. Br. 23). Therefore, the above-referenced portions of the Specification discussing direct connections are relevant to construing the term "directly connectable" in claim 1.

Appellant also argues the Examiner's construction improperly gives the same meaning to the two different terms, "connectable" and "directly connectable," in claim 1 and reads the term "directly" out of the claim (App. Br. 25). Appellant's argument is not persuasive. Although different claim terms are presumed to have different meanings, the presumption can be overcome based on the written description. *See Nystrom v. Trex Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) ("Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper."). Here, the portions of the written description of the '953 Patent discussed above indicate the Examiner's construction is reasonable. Moreover, as the Examiner explains and Appellant does not persuasively rebut, construing "directly connectable" in claim 1 to

6

A00016

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

encompass devices capable of connecting through an intermediary device does not necessarily result in the terms "directly connectable" and "connectable" in claim 1 having the same meaning (Ans. 8 (explaining the term "directly connectable" in claim 1 may require a defined path for the connection, whereas the term "connectable" in claim 1 may not)).

### Construction of "Personal Computer"

Appellant argues the term "personal computer" in claim 1 should be construed so as to exclude a personal computer operating as a terminal (App. Br. 27-29). The Examiner finds there is no support for construing the term "personal computer" in claim 1 to exclude a personal computer operating as a terminal (Ans. 9-11). We note the District Court construed the term "personal computer" in claim 1 as follows: "[a] desktop, floor-standing, or portable microcomputer that usually consists of a system unit, a display monitor, a keyboard, one or more diskette drives, internal fixed storage, and an optional printer. A PC is designed to give independent computing power to a single user." *CSB-Sys.*, 2011 WL 3240838, at *11. The District Court did not state whether its construction excludes a personal computer operating as a terminal. *Id.*

We agree with the Examiner the term "personal computer" in claim 1 encompasses a personal computer operating as a terminal. We conclude there is no persuasive evidence of record for construing the term "personal computer" in claim 1 as proposed by Appellant. Appellant argues the language of claim 1 requires the personal computer to send and receive data records, and therefore the personal computer cannot be operating as a terminal (App. Br. 28). However, Appellant points to no evidence indicating

7

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

a personal computer operating as a terminal cannot send and receive data records. In fact, the prior art of record teaches that a personal computer operating as a terminal can send and receive data records (*see, e.g.,* Gursahaney 6:44-49 ("The gateway 118 will *send data* from the PBX 120 *to the service representative workstations* 100 and 100' via the local area network 116. The gateway 118 will *receive transfer and conferencing requests from service representative workstations* 100 and 100' . . ." (emphasis added)). Further, the portions of the written description of the '953 Patent cited by Appellant (App. Br. 28) do not indicate the term "personal computer" in claim 1 excludes a personal computer operating as a terminal.

### Construction of "LAN Server"

Appellant argues the term "LAN server" in claim 1 should be construed to mean a computer providing shared services to other components on the Local Area Network ("LAN") and responding to requests from clients (App. Br. 30). The Examiner finds there is no support for construing the term "LAN server" in claim 1 to include such limitations (Ans. 11-12). We note the District Court construed the term "server" in claim 1 as follows: "a computer on the Local Area Network (LAN) that responds to requests from telephone software and provides shared services to the personal computers/workstations in response to queries from clients." *CSB-Sys.*, 2011 WL 3240838, at *14.

For purposes of this appeal, we need not decide whether the term "LAN server" in claim 1 includes the limitations proposed by Appellant. Appellant admits the limitations in its proposed construction are all inherent

8

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

features of a server on a LAN (App. Br. 32; Reply Br. 21-22). As such, Appellant admitted during the oral hearing, if a prior art reference teaches a server on a LAN, it necessarily teaches all the limitations in Appellant's proposed construction (Tr. 12:19-23). As discussed below, we find the Heinzelmann and Administrator's Guide references expressly teach a server on a LAN and thus, by Appellant's admission, teach the "LAN server" recited in claim 1. Further, as discussed below, we find Gursahaney teaches the "LAN server" in claim 1 even under Appellant's proposed construction, because the host computer in Gursahaney provides shared services to other components on the LAN and responds to requests from clients.

### Construction of "Data Record"

Appellant argues the term "data record" in claim 1 should be construed to mean a set of data by which information is electronically sent from the integration element to the personal computer and back, and by which information is queried from a database by a client using a personal computer (App. Br. 33). The Examiner finds the term "data record" in claim 1 means a set of data by which information is electronically sent (Ans. 13), and identifies where each of the references (i.e., Heinzelmann, Gursahaney, and the Administrator's Guide) teach the data record under that construction (Final Rej. 75, 76, 83, 84, 96). We note Appellant's proposed construction is the same as the District Court's construction of the term "data record" in claim 1. *CSB-Sys.*, 2011WL 3240838, at *16.

For purposes of this appeal, we need not decide whether the term "data record" in claim 1 includes the limitations proposed by Appellant. Appellant does not explain why any of the references relied on by the

9

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Examiner (i.e., Heinzelmann, Gursahaney, and the Administrator's Guide) do not teach the "data record" in claim 1 under the Examiner's or Appellant's proposed construction. Appellant suggests the menu image taught by Gursahaney is not the "data record" recited in claim 1, but fails to provide any reasoning or evidence to support that argument (App. Br. 55). Therefore, we are not persuaded the Examiner erred in finding the Heinzelmann, Gursahaney, and Administrator's Guide references teach the "data record" in claim 1, even under Appellant's proposed construction.

## PRIOR ART REJECTIONS

### Anticipation of Claim 1 by Heinzelmann

Appellant argues Heinzelmann does not teach a plurality of telephone extensions which are directly connectable to a telephone network because Heinzelmann teaches telephones connected to a telephone network through a private branch exchange ("PBX") (App. Br. 37). Appellant's argument is not persuasive. As discussed above, we agree with the Examiner the term "directly connectable" in claim 1 encompasses devices capable of a connection through an intermediary device. Appellant does not dispute Heinzelmann teaches the claim limitation at issue under the Examiner's construction of "directly connectable" in claim 1.

Appellant argues Heinzelmann does not teach at least one connection element selected from the group consisting of an SLDC connection element and an ISDN connection element because Heinzelmann does not teach an ISDN signaling protocol between the PBX and the phone management server (App. Br. 44). Appellant's argument is not persuasive. As the

10

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Examiner explains (Ans. 18), Heinzelmann teaches, in an ISDN, the Digital
Communications Protocol ("DCP") signaling protocol is the CCITT-defined
Q.931 protocol (Heinzelmann 6:3-8). As the Examiner also explains (Final
Rej. 74), Heinzelmann teaches the phone management server communicates
with the PBX using the appropriate DCP (Heinzelmann 5:2-4). Therefore,
we agree with the Examiner (Ans. 20) the phone management server
includes an ISDN connection element because Heinzelmann teaches the
phone management server will communicate with the PBX using the
appropriate DCP signaling protocol for an ISDN.

Appellant argues Heinzelmann does not teach a LAN server because
Heinzelmann teaches away from using a LAN server to integrate an EDP
system and a telephone system (App. Br. 47-48). Appellant's argument is
not persuasive. Heinzelmann indicates a LAN server alone does not
integrate voice transmission capabilities (Heinzelmann 2:4-6). However, as
the Examiner explains (Ans. 24), Heinzelmann explicitly teaches a LAN
server is part of the invention. For example, Heinzelmann states:

> The description of the present invention which follows is
> directed to the technique of locally associating a telephone
> connected to an AT&T System . . . and a personal computer
> (PC) or minicomputer connected to a separate AT&T
> STARLAN PC Local Area Network (PC-LAN) in order to
> provide a phone management server application.

(Heinzelmann 2:59-68). Therefore, we agree with the Examiner that
Heinzelmann teaches a LAN server.[3]

---

[3] We note, contrary to Appellant's argument (App. Br. 48), claim 1 does not
require the LAN server to be arranged between the integration element and
the personal computers.

11

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Appellant argues Heinzelmann does not teach an EDP system because Heinzelmann does not show a shared database associated with the LAN server (App. Br. 49). Appellant's argument is not persuasive. The Examiner explains (Ans. 26) Heinzelmann teaches an AT&T STARLAN PC Local Area Network (PC-LAN) allowing personal computers to access "shared" directories and files (Heinzelmann 1:63-68). As discussed above, this LAN is part of the invention disclosed in Heinzelmann. Therefore, we agree with the Examiner that Heinzelmann teaches a shared database associated with a LAN server.[4]

Accordingly, we sustain the Examiner's rejection of claim 1 as being anticipated by Heinzelmann.

*Anticipation of Claims 1-6 by Gursahaney*

Appellant argues Gursahaney does not teach a plurality of telephone extensions which are directly connectable to a telephone network because Gursahaney teaches telephones connected to a telephone network through a PBX (App. Br. 51). Appellant's argument is not persuasive. As discussed above, we agree with the Examiner the term "directly connectable" in claim 1 encompasses devices capable of a connection through an intermediary device. Appellant does not dispute Gursahaney teaches the limitation at issue under the Examiner's construction of "directly connectable" in claim 1.

Appellant argues Gursahaney does not teach a plurality of personal computers because the personal computers in Gursahaney are operating as

---

[4] As a result, we need not decide whether the "EDP system" recited in the preamble of claim 1 is a substantive limitation to be afforded patentable weight.

12

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

terminals (App. Br. 53-54). Appellant's argument is not persuasive. As discussed above, we agree with the Examiner the term "personal computer" in claim 1 encompasses personal computers operating as terminals. Appellant does not dispute Gursahaney teaches the claim limitation at issue under the Examiner's construction of "personal computer" in claim 1.

Appellant argues Gursahaney does not teach a LAN server because the host computer in Gursahaney cited by the Examiner is not a server (App. Br. 64). Appellant's argument is not persuasive. Although Gursahaney does not expressly contain the word "server," Gursahaney teaches a host computer that performs all the functions Appellant contends are necessary for a computer to be a server. As the Examiner explains (Final Rej. 84), the workstations (or clients) on the LAN can request shared services, in the form of caller-specific information, from the host computer via the LAN (Gursahaney 4:45-48 ("The workstation 100, under program control, automatically accesses host applications running on the host 200, to provide caller-specific information to the service representative."); *id.* at Fig. 26A). Therefore, we agree with the Examiner that Gursahaney teaches the "LAN server" in claim 1, even under Appellant's proposed construction.

Accordingly, we sustain the Examiner's rejection of claims 1-6 as being anticipated by Gursahaney.

### *Obviousness of Claims 1-6 over Gursahaney and Dorst*

The Examiner cites to Dorst as teaching a telephone capable of connecting to a telephone network without any intermediary devices (Final Rej. 95), as required by Appellant's proposed construction of "directly connectable" in claim 1. As discussed above, we disagree with Appellant's

13

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

proposed construction of "directly connectable" in claim 1, and we sustain

the Examiner's rejection of claims 1-6 as anticipated by Gursahaney.

Nonetheless, we agree with the Examiner's finding Dorst teaches a

telephone capable of connecting to a telephone network without any

intermediary devices.

Appellant argues Dorst teaches an enhanced telephone, whereas the

"telephone extensions" recited in claim 1 of the '953 Patent must be simple

telephone extensions without multi-functions (App. Br. 70). Appellant's

argument is not persuasive. Claim 1 recites "telephone extensions," and we

are not persuaded the portion of the written description of the '953 Patent

cited by Appellant (App. Br. 70) requires limiting the term "telephone

extensions" in claim 1 to simple telephone extensions without multi-

functions. Moreover, Appellant's argument only addresses the references

individually, not the combination cited by the Examiner. *See In re Keller*,

642 F.2d 413, 426 (CCPA 1981) ("[O]ne cannot show non-obviousness by

attacking references individually where, as here, the rejections are based on

combinations of references."). The Examiner cites to Gursahaney as

teaching the "telephone extensions" recited in claim 1 of the '953 Patent

(Ans. 36-37). The Examiner cites to Dorst only to show it would have been

well-known to one of ordinary skill in the art at the time of the invention that

telephone extensions are capable of being connected to a telephone network

without intermediary devices (Ans. 36-37). Therefore, Appellant's

argument does not address the combined teachings of the references as they

apply to the disputed claim limitation.

14

A00024

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Appellant argues the Examiner does not show one of ordinary skill in the art could use the enhanced telephone taught by Dorst in the system taught by Gursahaney (App. Br. 70-71). However, "[t]o justify combining reference teachings in support of a rejection it is not necessary that a device shown in one reference can be physically inserted into the device shown in the other." *In re Keller*, 642 F.2d at 425. "[T]he test is what the combined teachings of the references would have suggested to those of ordinary skill in the art." *Id*. For at least this reason, Appellant's argument is not persuasive.

Accordingly, we sustain the Examiner's rejection of claims 1-6 as being unpatentable over Gursahaney and Dorst.

### Obviousness of Claims 7-8 over Gursahaney, Dorst, and Okata

Appellant argues the Examiner erred procedurally by not making the necessary factual findings to support an obviousness rejection (App. Br. 72-74). Specifically, Appellant argues the Examiner adopted the reasons set forth by the Third Party Requestor, which are mere conclusions (App. Br. 73). Appellant's argument is not persuasive. The Examiner adopted the reasoning of the Third Party Requestor (Ans. 38-39), which explains the scope and content of Gursahaney, Dorst, and Okata, identifies the teachings of Okata that compensate for the deficiencies in Gursahaney and Dorst, and provides support for the conclusion that incorporating the known fax capabilities of Okata into the system of Gursahaney would yield predictable results (Request 135-137). Therefore, we find the Examiner provided articulated reasoning with some rational underpinning that the cited

15

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

combination would have been obvious to one of ordinary skill in the art. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

Accordingly, we sustain the Examiner's rejection of claims 7 and 8 as being unpatentable over Gursahaney, Dorst, and Okata.

### Obviousness of Claims 7-8 over Gursahaney, Dorst, and Koshiishi

With respect to the combination of Gursahaney, Dorst, and Koshiishi, Appellant presents the same argument addressed above regarding the combination of Gursahaney, Dorst, and Okata (App. Br. 72-74). For the reasons discussed above, Appellant's argument is not persuasive.

Accordingly, we sustain the Examiner's rejection of claims 7 and 8 as being unpatentable over Gursahaney, Dorst, and Koshiishi.

### Obviousness of Claims 1-8 over IBM and Gursahaney

Appellant argues there is a lack of foundation for the Administrator's Guide because the Third Party Requester does not explain where the document was found or who provided the document and because it is an incomplete photocopy (App. Br. 75-77). The Administrator's Guide indicates it is an IBM document intended to provide information to assist the person responsible for installing and configuring the CallCoordinator/2 system (Administrator's Guide iii). Appellant does not provide any persuasive evidence indicating the Administrator's Guide is not what it purports to be on its face. *See NTP*, 654 F.3d at 1296 ("NTP had the burden to prove the document was not authentic."). The copy of the Administrator's Guide provided by the Third Party Requestor includes pages i-xii and 1-10 in their entirety, but lacks the remaining pages (*see*

16

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Administrator's Guide). However, Appellant does not explain why the missing pages are necessary to understand the available portions of the reference, nor does Appellant suggest the missing pages contradict the available portions of the reference. *See In re Enhanced Sec. Research, LLC*, 739 F.3d 1347, 1356 (Fed. Cir. 2014). Therefore, Appellant's argument is not persuasive.

Appellant argues the Examiner does not establish the Administrator's Guide is a printed publication because there is no evidence it could have been accessed by one of ordinary skill in the art (App. Br. 78-81). Appellant points to electronic searches performed by Appellant purportedly showing the document could not be located in the IBM Publication Center, the Library of Congress, or the Public Catalog of the U.S. Copyright Office (App. Br. 81). Appellant's argument is not persuasive. As the Examiner explains (Ans. 40-41), the Administrator's Guide indicates it was completed in March 1992, and it would have been available for order through an IBM representative or local IBM branch (Administrator's Guide ii). Thus, the Administrator's Guide, on its face, indicates one of ordinary skill in the art in this field would have been able to access a copy by ordering it from IBM. The Administrator's Guide also appears to be a bound document, indicating it was a final version available for ordering, not a draft (*see* Administrator's Guide). Appellant's evidence that the document could not be located using three electronic searches performed in 2012 (*see* App. Br. Ex. 12-14) does not persuade us that one of ordinary skill in the art could not access the document, such as by ordering it from IBM, in March 1992.

17

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

Appellant argues the Examiner does not establish when the Administrator's Guide was accessible by the public because the March 1992 date on the document may indicate when the document was written, not when it was available to the public (App. Br. 82). Appellant's argument is not persuasive. As discussed above, on its face, the Administrator's Guide is a final version marked with the date March 1992, and could have been ordered from IBM. Appellant's argument that the document may not have been publicly available in March 1992 is based on speculation (*see, e.g.,* App. Br. 82 ("Beta-testing of the software *may have been* ongoing or the software *could have been* held up for debugging." (emphasis added)), not evidence. *Cf. In re Geisler*, 116 F.3d 1465, 1470 (Fed. Cir. 1997) ("An assertion of what seems to follow from common experience is just attorney argument and not the kind of factual evidence that is required to rebut a prima facie case of obviousness." (citations omitted)).

Appellant argues the Administrator's Guide does not teach a plurality of personal computers because the personal computers in the Administrator's Guide are operating as terminals (App. Br. 87-88). Appellant's argument is not persuasive. As discussed above, we agree with the Examiner the term "personal computer" in claim 1 encompasses personal computers operating as terminals. Appellant does not dispute the Administrator's Guide teaches the claim limitation at issue under the Examiner's construction of "personal computer" in claim 1.

Appellant argues the Administrator's Guide does not teach a LAN server because a host application may reside on the LAN server disclosed in the Administrator's Guide (App. Br. 90-91). According to Appellant, the

18

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

claims make clear the LAN server in the claimed integrated system plays no part in the control of information (App. Br. 91). Appellant's argument is not persuasive. Claim 1 simply recites "a LAN connected to a LAN server." Claim 1 does not limit the types of applications that can reside on the LAN server. As such, we agree with the Examiner (Ans. 47-48) that the Administrator's Guide teaches the "LAN server" recited in claim 1 (Administrator's Guide Fig. 1).

Accordingly, we sustain the Examiner's rejection of claims 1-8 as being unpatentable over IBM and Gursahaney.

*Proposed Claim Amendments*

Appellant explains the Examiner refused to enter certain claim amendments and argues the claim amendments should be considered on appeal (App. Br. 92). The issue of whether the Examiner's refusal to enter an amendment after final rejection constitutes an abuse of discretion is a matter remedied by petition, and thus is not before this panel on appeal. *In re Mindick*, 371 F.2d 892, 894 (CCPA 1967).

DECISION

The Examiner's rejection of claim 1 as being anticipated by Heinzelmann is affirmed.

The Examiner's rejection of claims 1-6 as being anticipated by Gursahaney is affirmed.

The Examiner's rejection of claims 1-6 as being unpatentable over Gursahaney and Dorst is affirmed.

19

Appeal 2014-003666
Patent 5,631,953
Reexamination Control 90/012,210

The Examiner's rejection of claims 7 and 8 as being unpatentable over Gursahaney, Dorst, and Okata is affirmed.

The Examiner's rejection of claims 7 and 8 as being unpatentable over Gursahaney, Dorst, and Koshiishi is affirmed.

The Examiner's rejection of claims 1-8 as being unpatentable over IBM and Gursahaney is affirmed.


### TIME PERIOD FOR RESPONSE

Requests for extensions of time in this *ex parte* reexamination proceeding are governed by 37 C.F.R. § 1.550(c). *See* 37 C.F.R. § 41.50(f).


### AFFIRMED


msc

For Patent Owner:

SCHMIDT LLC
560 LEXINGTON AVE
16TH FLOOR
NEW YORK, NY 10022

For Third Party Requestor:

WOODCOCK WASHBURN LLP
CIRA CENTRE, 12TH FLOOR
2929 ARCH STREET
PHILADELPHIA, PA 19104

20

A00030

# United States Patent [19]

## Thomas et al.

[11] **Patent Number:** **5,631,953**

[45] **Date of Patent:** **May 20, 1997**

[54] **CIRCUIT ARRANGEMENT FOR INTEGRATION OF EDP SYSTEMS IN THE UTILIZATION OF TELEPHONE SYSTEMS**

[75] Inventors: **Gottfried Thomas**, Hückelhoven; **Ulrich Mergemann**, Pulheim, both of Germany

[73] Assignee: **CSB-System Software -Entwicklung & Unternehmungsberatung GmbH**, Geilenkirchen, Germany

[21] Appl. No.: **522,313**

[22] PCT Filed: **Feb. 26, 1994**

[86] PCT No.: **PCT/DE94/00229**

§ 371 Date: **Aug. 25, 1995**

§ 102(e) Date: **Aug. 25, 1995**

[87] PCT Pub. No.: **WO94/21091**

PCT Pub. Date: **Sep. 15, 1994**

[30] **Foreign Application Priority Data**

Mar. 5, 1993 [DE] Germany ............................ 9303214 U

[51] Int. Cl.[6] ............................................ **H04M 11/00**
[52] U.S. Cl. ............................. **379/94**; 370/385; 379/399
[58] Field of Search ........................ 379/94, 93, 96–100, 379/242, 387, 399; 370/110.1, 85.13; 375/216; 348/14–16

[56] **References Cited**

U.S. PATENT DOCUMENTS

5,448,286   9/1995   Decaesteke et al. ........................ 379/94

5,453,984   9/1995   Mueller ................................. 370/110.1
5,461,620   10/1995   Bergler ................................ 370/110.1

*Primary Examiner*—Wing F. Chan
*Attorney, Agent, or Firm*—Michael J. Striker

[57] **ABSTRACT**

The invention relates to a circuit arrangement for the integration of EDP systems in the use of telephone installations which are connected to the public ISDN or Euro ISDN telephone systems. The aim is to connect a telephone installations to an EDP installation in such a way that all the functions of the EDP system can be used during the use of the telephone installation. This aim is achieved by using a circuit arrangement consisting of: the telephone sets (2;11;13) which are directly connected to the public ISDN or Euro ISDN telephone system (1) via a line (a) and an intelligent telephone installation (3); and an integration component (5) which is arranged between the intelligent telephone installation (3) and the personal computers (4; 12; 14), on the one hand receives signals via the SDLC or ISDN connector (8) by means of line (b) from the public ISDN or Euro ISDN telephone system (1) through the intelligent telephone installation (3) and send signals back to the public ISDN or Euro ISDN telephone system (1), and on the other hand transmits a set of data having suitable information via line (c), an LAN (9) which is connected via line (d) to the LAN server (10) and line (c) to the personal computers (4; 12; 14) and receives the set of data back from the personal computers (4; 12; 14). The conversion of the signals into the set of data and vice versa is performed by the integration component (5) via a computing system (6), a software layer (7) and an SDLC or ISDN connector (8) with internal software.

**8 Claims, 1 Drawing Sheet**



**U.S. Patent**          May 20, 1997          **5,631,953**



FIG. 1

5,631,953

| 1 | 2 |

# CIRCUIT ARRANGEMENT FOR INTEGRATION OF EDP SYSTEMS IN THE UTILIZATION OF TELEPHONE SYSTEMS

## BACKGROUND OF THE INVENTION

The invention concerns a circuit arrangement for the integration of EDP systems in the utilization of telephone systems connected to the public telephone network ISDN or Euro ISDN.

With the development of data acquisition, processing, evaluation and last but not least its application, the necessary communication requirements increased. There is now an urgent need to find economical solutions which incorporate new ways of integrating speech and data communications systems.

Until today only partial and isolated solutions could be produced satisfactorily for PC-TC links. Present speech and data communications systems are characterized mainly by manual activities and voice communication which are time-consuming and subject to a high loss rate. It is therefore common practice today for speech and data communications to take place in such a way that the caller determines the competent party by telephone, that they then exchange data and information necessary for mutual identification and which form the basis for the subsequently desired voice and data communications of the caller.

The competent party for the call acquires the data and information desired by the caller from his computer or stores additional data and information of the caller in it. If other data and information is then required which the competent party does not have at his disposal, the responsible person must be included as a further competent party in this speech and data communication in the same way as described above. The disadvantage of this speech and data communication is that it is too time-consuming, that incomplete and false information may be transferred due to the speech communication and manual operation of the computer. In addition no data-controlled connection setup is possible with the switching functions

connect

transcouple

release

activation of refer-back

logon

the monitoring system

inquiry of the connection status

disconnect

transfer

brokerage

initiation of multiparty conference

determination of the party status

the control function for the features

parallel or simultaneous fax transmissions and data transfer with ongoing speech and data communication

A telephone data service with respect to the control of digital telephone extensions with data entry via a telecommunications and information system and identification of the caller via ISDN or Euro ISDN in the present 1TR6 protocol or the future EDSS1 protocol cannot be protected. Other disadvantages are that data and information which may be available in part in large volumes cannot be transferred mutually in this speech and data communication. This is done subsequently by mailing or by fax. This means even more time is lost and a delay in urgent decision making. Furthermore solutions are known which allow a partly rational speech and data communication by using (special) high-performance telephone extensions. Every telephone extension is connected to only one computer by an expensive circuit card which operates with a specially developed software. Such a solution brings further disadvantages in addition to the high costs. The disadvantages are the impossibility of setting up multiparty conferences especially for data transmission. A direct data transfer from the competent party to the caller and vice versa and the control of digital telephone extensions with data entry via a telecommunications and information system and the identification of the caller by ISDN or Euro ISDN in the present 1TR6 protocol or the future EDSS1 protocol is only possible with a telephone extension and the respective connected computer.

According to DE-OS 4101885 a telecommunications system, a telephone system to be precise, is known which possesses a switching system with terminals and which is connected to a computer for simplified or additional handling of computer-aided communication services. It is distinguished by the fact that the computer is an integral part of the telecommunications system and has an interface which is available not for telecommunications services but for external computer services. This solution also has disadvantages in that all functions of a TC system cannot be used and operated by every computer in the network so that not every type of communication can be generated by all computers in the network (speech and data communication and image transfer).

## SUMMARY OF THE INVENTION

Accordingly, it is an object of the present invention to provide a circuit arrangement for integration of EDP systems in the utilization of telephone systems, which avoids the disadvantages of the prior art.

In keeping with these objects and with others which will become apparent hereinafter, one feature of the present invention resides, briefly stated, in a circuit arrangement for integration of EDP systems in utilization of telephone systems connected to a public ISDN or Euro ISDN telephone network, the circuit arrangement comprising a plurality of telephone extensions which are directly connectable to a telephone network selected from the group consisting of a public ISDN telephone network and Euro ISDN telephone network, a first line, an intelligent telephone system arranged so that the telephone extensions are connectable with the at least one telephone network through the first line and the intelligent telephone system, a plurality of personal computers, an integration element arranged between the intelligent telephone system and the personal computers, the integration element receiving signals via at least one connection element selected from the group consisting of an SDLC connection element and an ISDN connection element via a second line from the at least one telephone network via the intelligent telephone system and sending back signals to the at least one telephone network, the integration element also sending a data record assigned an appropriate information via a third line, via a LAN connected to a LAN server by a fourth line and via a fifth line to the personal computers and receiving a data record from the personal computers again, a computing system, and a software layer arranged so that a conversion of the signals into a data record and vice versa is carried by the integration element, by the computing system, by the software layer and by the at least one connection element with an internal software.

It is another feature of the present invention that the personal computers are provided with keyboards so that a speech or data communication between a caller via the at

A00033

5,631,953

| 3 | 4 |

least one telephone network and a competent party on one of the telephone extensions with a respectively assigned one of the personal computers is sent to another competent party and back after the respective competent party has sent a data record assigned the appropriate information to the integration element by operating the keyboard of the respectively assigned one of the personal computers, and a necessary signal leaving the integration element is applied at the intelligent telephone system and a connection to at least one another or every telephone extension is established, so that a connection to every telephone extension simultaneously provides an immediate integration of the personal computer assigned to the telephone extension in the established speech and data communication.

It is also a feature of the present invention that the integration element is formed so that it is possible to hold an applied speech and data communication in conference where required together with at least one further competent party or all parties of the telephone extensions.

It is an additional feature of the present invention that the integration element is formed so that data are transferable when a speech and data communication has been established by every competent part even during a conference and by all competent parties both to and from a caller to every participating competent party and between the competent parties with and without a caller.

It is a further feature of the present invention that the integration element is formed so that in addition to the speech and data communication, a fax transmission is made simultaneously or parallel between the respective competent party and the caller using the keyboard of a respective one of the personal computers by using the connection of the respective personal computer with the at least one telephone network via the fixed line with the LAN with inclusion of the LAN server via the fourth line, via the third line with the integration element comprising the computing system, the software, the at least one connection element with the internal software, and via the second line with the intelligent telephone system.

The advantages of the invention are that a telephone system can be linked to an EDP system in such a way that all functions of the EDP system can be used during utilization of the telephone system.

It guarantees a data-controlled connection setup with the switching functions
connect
transcouple
release
activation of refer-back
disconnect
transfer
brokerage
initiation of multiparty conference
logon
the monitoring system
inquiry of the connection status
determination of the party status
the control function for the features
parallel or simultaneous fax transmissions and data transfer with ongoing speech and data communication

Other advantages of the invention are the control of digital telephone extensions with data entry via a telecommunications and information system and identification of the caller by ISDN or Euro ISDN in the present 1TR6 protocol or the future EDSS1 protocol. If the LAN should fail, the speech communication can be maintained. Simple telephone

extensions without multi-functions are required to operate this speech and data communication system.

The novel features which are considered as characteristic for the invention are set forth in particular in the appended claims. The invention itself, however, both as to its construction and its method of operation, together with additional objects and advantages thereof, will be best understood from the following description of specific embodiments when read in connection with the accompanying drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a view schematically showing a circuit arrangement for integration of EDP systems in the utilization of telephone systems, in accordance with the present invention.

DESCRIPTION OF THE PREFERRED EMBODIMENTS

In order to satisfy the increasing communications requirements, it is necessary to design speech and data communications systems more economically and here the most acute need is for an integration system.

The circuit arrangement for the integration of EDP systems in the utilization of telephone systems illustrated in FIG. 1 is shown by way of explanation on an intelligent telephone system which is connected to the public ISDN or Euro ISDN telephone network externally and internally both via the LAN with three personal computers and with three telephone extensions. However, it should be emphasized that this circuit arrangement can also be used for analog telephone systems with a specially developed software.

When a caller dials a competent party of telephone extension 2 through the public ISDN or Euro ISDN telephone network and the connection is established, the connection is made directly through an intelligent telephone system 3 and a line a to a telephone extension 2. At the same time the personal computer 4 assigned to telephone extension 2 establishes a connection with the intelligent telephone system 3 via a line b, an integration element 5 comprising a computing system 6, a software 7 and an SDLC or ISDN connection element 8 with an internal software, a line c, a LAN 9 including the LAN server 10 by means of line d and a line e. With this connection every dialling function is established, the incoming call is identified and all the necessary data are displayed on the personal computer 4. This is realized by the integration element 5 in such a way that when a call is connected to telephone extension 2 a signal is immediately sent on line b by the intelligent telephone system 3 to the integration element 5, which, assigned the appropriate information in a data record by the integration element 5, is passed via the LAN 9 to the associated personal computer 4. Here it is possible to pass the caller data and information directly from the LAN server 10 and its database at the same time as the call arrives. If the party dialled by the caller with telephone extension 2 is not the competent party then the caller can call the competent party, e.g. extension 11 by operating the keyboard of his personal computer 4 and by switching a data record via line e, the LAN 9 via line c to the integration element 5 by the signal generated by the integration element 5, via line b to the intelligent telephone system 3 and from there via the line a. Here too, all the necessary data are displayed immediately after the connection has been made on his personal computer 12, released by signals of the intelligent telephone system 3 which is converted into a data record in the integration element 5 and was sent via LAN 9 with inclusion of the

A00034

5,631,953

**5**

database of the LAN server **10** and the associated lines c; d; e to the personal computer **12** and the necessary communication can take place immediately. If the called or switched competent party, e.g. at extension **11**, requires the inclusion of another competent party or several competent parties to clarify questions and data of the caller, he can include these competent parties in a conference by operating the keyboard of his own personal computer **12** and by transferring a data record in the same way as described above via the intelligent telephone system **3** by establishing the connection so that all telephone extensions **2; 11; 13;** and personal computers **4; 12; 14** are connected. Whereby all those participating in the conference can transfer data and information to the caller and from the caller to all other participants in the conference. Exchange of data between the competent parties is also possible irrespective of whether a caller is included in the speech and data communication or not.

Parallel to the above mentioned voice and data communication it is possible for every competent party to send the caller a fax.

This simultaneous and parallel fax transmissions next to the ongoing speech and data communication via the connection of the respective personal computer **4, 12** or **14** is made simultaneously via the line e with the LAN **9** with inclusion of the LAN server **10** via the line d, via the line c with the integration element **5** comprising the computing system **6**, the software **7** and the SDLC or ISDN connection element **8** with an internal software and via the line b with the intelligent telephone system **3** to the public ISDN or Euro ISDN telephone network and thus to the caller by operating the keyboard of the personal computer **4; 12** or **14**.

It will be understood that each of the elements described above, or two or more together, may also find a useful application in other types of constructions differing from the types described above.

While the invention has been illustrated and described as embodied in a circuit arrangement for integration of EDP systems in the utilization of telephone systems, it is not intended to be limited to the details shown, since various modifications and structural changes may be made without departing in any way from the spirit of the present invention.

Without further analysis, the foregoing will so fully reveal the gist of the present invention that others can, by applying current knowledge, readily adapt it for various applications without omitting features that, from the standpoint of prior art, fairly constitute essential characteristics of the generic or specific aspects of this invention.

What is claimed as new and desired to be protected by Letters Patent is set forth in the appended claims.

We claim:

1. A circuit arrangement for integration of EDP systems in utilization of telephone systems connected to a public ISDN or Euro ISDN telephone network, the circuit arrangement comprising a plurality of telephone extensions which are directly connectable to a telephone network selected from the group consisting of a public ISDN telephone network and Euro ISDN telephone network; a first line; an intelligent telephone system arranged so that said telephone extensions are connectable with said at least one telephone network through said first line and said intelligent telephone system; a plurality of personal computers; an integration element arranged between said intelligent telephone system and said personal computers, said integration element receiving signals via at least one connection element selected from the group consisting of an SDLC connection element and an ISDN connection element via a second line from said at least

**6**

one telephone network via said intelligent telephone system and sending back signals to said at least one telephone network, said integration element also sending a data record assigned an appropriate information via a third line, via a LAN connected to a LAN server by a fourth line and via a fifth line to said personal computers and receiving a data record from said personal computers again; a computing system; and a software layer arranged so that a conversion of the signals into a data record and vice versa is carried by said integration element, by said computing system, by said software layer and by said at least one connection element with an internal software.

2. A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication between a caller via said at least one telephone network and a competent party on one of said telephone extensions with a respectively assigned one of said personal computers is sent to another competent party and back after the respective competent party has sent a data record assigned the appropriate information to said integration element by operating said keyboard of the respectively assigned one of said personal computers, and a necessary signal leaving said integration element is applied at said intelligent telephone system and a connection to at least one another telephone extension is established, so that a connection to every telephone extension simultaneously provides an immediate integration of said personal computer assigned to said telephone extension in the established speech and data communication.

3. A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication between a caller via said at least one telephone network and a competent party on one of said telephone extensions with a respectively assigned one of said personal computers is sent to another competent party and back after the respective competent party has sent a data record assigned the appropriate information to said integration element by operating said keyboard of the respectively assigned one of said personal computers, and a necessary signal leaving said integration element is applied at said intelligent telephone system and a connection to all said telephone extensions is established, so that a connection to every telephone extension simultaneously provides an immediate integration of said personal computer assigned to said telephone extension in the established speech and data communication.

4. A circuit arrangement as defined in claim 2, wherein said integration element is formed so that it is possible to hold an applied speech and data communication in conference where required together with at least one further competent party.

5. A circuit arrangement as defined in claim 2, wherein said integration element is formed so that it is possible to hold the speech and data communication in conference with all parties of said telephone extensions.

6. A circuit arrangement as defined in claim 1, wherein said integration element is formed so that data are transferable when a speech and data communication has been established by every competent part even during a conference and by all competent parties both to and from a caller to every participating competent party and between the competent parties with and without a caller.

7. A circuit arrangement as defined in claim 1, wherein said integration element is formed so that in addition to the speech and data communication, a fax transmission is made simultaneously between the respective competent party and the caller using the keyboard of a respective one of said

A00035

5,631,953

7

personal computers by using the connection of the respective personal computer with said at least one telephone network via said fixed line with the LAN with inclusion of the LAN server via said fourth line, via said third line with the integration element comprising said computing system, said software, said at least one connection element with the internal software, and via said second line with the intelligent telephone system.

8. A circuit arrangement as defined in claim 1, wherein said integration element is formed so that in addition to the speech and data communication, a fax transmission is made parallel between the respective competent party and the

8

caller using the keyboard of a respective one of said personal computers by using the connection of the respective personal computer with said at least one telephone network via said fixed line with the LAN with inclusion of the LAN server via said fourth line, via said third line with the integration element comprising said computing system, said software, said at least one connection element with the internal software, and via said second line with the intelligent telephone system.

\*    \*    \*    \*    \*

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| In re CSB-SYSTEM INTERNATIONAL, INC.     ) | |
| Reexamination Control No. 90/012,210     ) | Appeal No. 2015- |
| Filed: March 27, 2012     ) | |
| Patent No. 5,631,953     ) | |
| For: CIRCUIT ARRANGMENT FOR INTEGRATION) | |
|     OF EDP SYSTEMS IN THE UTILIZATION OF  ) | |
|     TELEPHONE SYSTEMS     ) | |

## NOTICE FORWARDING CERTIFIED LIST

A notice of appeal to the United States Court of Appeals for the Federal Circuit was timely filed on June 1, 2015, in the United States Patent and Trademark Office in connection with the above-identified *ex parte* reexamination proceeding.  Pursuant to 35 U.S.C. § 143 and Federal Circuit Rule 17(b)(1), the United States Patent and Trademark Office (USPTO) is today forwarding a certified list of documents comprising the record in the USPTO.

Mr. Jeremiah S. Helm is representing the Director in this appeal.  Appellant must contact Mr. Helm at (571) 272-9035 to arrange for designating the record.

Deliver all papers served on the Solicitor in connection with this appeal as follows:

By hand to:          Office of the Solicitor
                      600 Dulany Street
                      Madison West - Room 08C43
                      Alexandria, Virginia

By mail to:          U.S. Patent and Trademark Office
                      Office of the Solicitor
                      Mail Stop 8, P.O. Box 1450
                      Alexandria, VA 22313-1450

Respectfully submitted,


Michelle K. Lee
Under Secretary of Commerce
for Intellectual Property and Director
of the United States Patent and Trademark Office


Date: July 13, 2015          By: _____
                                 Tawana A. Hawkins
                                 Paralegal Specialist
                                 Mail Stop 8, P.O. Box 1450
                                 Alexandria, Virginia 22313-1450
                                 571-272-9035

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the NOTICE FORWARDING CERTIFIED LIST has been served on counsel for this 13th day of July, 2015 as follows:

PATENT OWNER
Bruce J. Koch
SCHMIDT LLC
560 Lexington Avenue, 16th Floor
New York, NY 10022

THIRD PARTY REQUESTER
Henrik D. Parker
WOODCOCK WASHBURN
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891

By: _Tawana A. Hawkins_

Tawana A. Hawkins
Paralegal Specialist

Form PTO 55 (12-80)

## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

7/13/15
_____

(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate list of the content entries in the file of the reexamination proceeding identified below. The list was taken from the IFW database of this office and comprises the record before the United States Patent and Trademark Office.

The Reexamination Proceeding of:

**CSB-SYSTEM INTERNATIONAL, INC.**

Reexamination No. : 90/012,210 filed March 27, 2012

Patent No.: 5,631,953

Title of Invention: **CIRCUIT ARRANGEMENT FOR INTEGRATION OF EDP SYSTEMS IN THE UTILIZATION OF TELEPHONE SYSTEMS**



By authority of the
DIRECTOR OF THE UNITED STATES PATENT
AND TRADEMARK OFFICE

_Jawanc    A. Hawkins_
_Certifying Officer_

A00040

| | |
|---|---|
| 03/27/2012 | REQUEST FOR EX PARTE REEXAMINATION |
| 03/27/2012 | INFORMATION DISCLOSURE STATEMENT |
| 04/05/2012 | NOTICE OF FAILURE TO COMPLY WITH EX PARTE REEXAMINATION REQUEST FILING REQUIREMENTS |
| 04/23/2012 | RETURNED MAIL: NOTICE OF FAILURE TO COMPLY WITH EX PARTE REEXAMINATION REQUEST FILING REQUIREMENTS |
| 04/24/2012 | REPLACEMENT REQUEST FOR EX PARTE REEXAMINATION |
| 04/24/2012 | INFORMATION DISCLOSURE STATEMENT |
| 04/30/2012 | TITLE REPORT |
| 05/01/2012 | NOTICE OF ASSIGNMENT OF REEXAMINATION REQUEST |
| 05/01/2012 | NOTICE OF REEXAMINATION REQUEST FILING DATE |
| 05/01/2012 | EXAMINER INTERVIEW SUMMARY RECORD |
| 05/01/2012 | RETURNED MAIL: NOTICE OF ASSIGNMENT OF REEXAMINATION REQUEST |
| 05/11/2012 | RETURNED MAIL: EXAMINER INTERVIEW SUMMARY RECORD |
| 06/01/2012 | ORDER GRANTING REQUEST FOR EX PARTE REEXAMINATION |
| 06/08/2012 | RETURNED MAIL: ORDER GRANTING REQUEST FOR EX PARTE REEXAMINATION |
| 06/25/2012 | REPLACEMENT REQUEST FOR EX PARTE REEXAMINATION |
| 06/25/2012 | INFORMATION DISCLOSURE STATEMENT |
| 07/16/2012 | PATENT OWNER'S POWER OF ATTORNEY |
| 07/16/2012 | STATEMENT SPECIFYING CHAIN OF TITLE |
| 07/16/2012 | REQUEST FOR EXTENSION OF TIME |
| 07/27/2012 | EXTENSION OF TIME GRANTED |
| 08/03/2012 | RETURNED MAIL: EXTENSION OF TIME GRANTED |
| 09/04/2012 | PATENT OWNER'S STATEMENT IN EX PARTE REEXAMINATION |
| 11/05/2012 | NON-FINAL OFFICE ACTION |
| 11/16/2012 | RETURNED MAIL: NON-FINAL OFFICE ACTION |
| 11/21/2012 | NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY |
| 11/21/2012 | NOTICE REGARDING CHANGE OF POWER OF ATTORNEY |
| 12/07/2012 | RETURNED MAIL: NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY/ NOTICE REGARDING CHANGE OF POWER OF ATTORNEY |
| 01/07/2013 | RESPONSE TO NON-FINAL OFFICE ACTION |
| 02/05/2013 | FINAL REJECTION |
| 04/03/2013 | APPLICANT INITIATED INTERVIEW REQUEST |
| 04/05/2013 | RESPONSE TO FINAL REJECTION |

Prosecution History Reexam No. 90/012,210

| | |
|---|---|
| 04/11/2013 | SUMMARY OF EXAMINER'S INTERVIEW |
| 04/24/2013 | ADVISORY ACTION |
| 04/24/2013 | EXAMINER'S INTERVIEW SUMMARY |
| 06/05/2013 | NOTICE OF APPEAL |
| 06/18/2013 | RESPONSE TO ADVISORY ACTION |
| 06/18/2013 | SUMMARY OF EXAMINER'S INTERVIEW |
| 07/10/2013 | RESPONSE TO ADVISORY ACTION |
| 07/10/2013 | EXAMINER'S INTERVIEW SUMMARY |
| 07/10/2013 | ADVISORY ACTION |
| 07/10/2013 | APPLICANT INITIATED INTERVIEW REQUEST |
| 08/02/2013 | RESPONSE TO ADVISORY ACTION |
| 08/05/2013 | APPEAL BRIEF FILED |
| 08/05/2013 | PATENT OWNER'S REQUEST FOR ORAL HEARING |
| 08/27/2013 | SUPPLEMENTAL ADVISORY ACTION |
| 09/18/2013 | EXAMINER'S ANSWER |
| 11/18/2013 | REPLY BRIEF |
| 03/17/2014 | DOCKETING NOTICE |
| 04/10/2014 | NOTICE OF HEARING |
| 04/25/2014 | PATENT OWNER'S CONFIRMATION OF ORAL HEARING |
| 06/05/2014 | PATENT OWNER'S REQUEST FOR POWERPOINT PROJECTOR FOR ORAL HEARING |
| 07/30/2014 | ORAL HEARING TRANSCRIPT |
| 07/31/2014 | PTAB DECISION ON APPEAL |
| 08/04/2014 | ORAL HEARING TRANSCRIPT |
| 09/30/2014 | REQUEST FOR REHEARING |
| 03/30/2015 | DECISION ON REHEARING |
| 06/01/2015 | APPEAL TO CAFC |

## CLAIMS ON APPEAL

1.      A circuit arrangement for integration of EDP systems in utilization of telephone systems connected to a public ISDN or Euro ISDN telephone network, the circuit arrangement comprising

a plurality of telephone extensions which are directly connectable to a telephone network selected from the group consisting of a public ISDN telephone network and Euro ISDN telephone network;

a first line;

an intelligent telephone system arranged so that said telephone extensions are connectable with said at least one telephone network through said first line and said intelligent telephone system;

a plurality of personal computers;

an integration element arranged between said intelligent telephone system and said personal computers, said integration element receiving signals via at least one connection element selected from the group consisting of an SDLC connection element and an ISDN connection element via a second line from said at least one telephone network via said intelligent telephone system and sending back signals to said at least one telephone network, said integration element also sending a data record assigned an appropriate information via a third line, via a LAN connected to a LAN server by a fourth line and via a fifth line to said personal computers and receiving a data record from said personal computers again;

a computing system; and

a software layer arranged so that a conversion of the signals into a data record and vice versa is carried by said integration element, by said computing system, by said software layer and by said at least one connection element with an internal software.

1

2.      A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication between a caller via said at least one telephone network and a competent party on one of said telephone extensions with a respectively assigned one of said personal computers is sent to another competent party and back after the respective competent party has sent a data record assigned the appropriate information to said integration element by operating said keyboard of the respectively assigned one of said personal computers, and a necessary signal leaving said integration element is applied at said intelligent telephone system and a connection to at least one another telephone extension is established, so that a connection to every telephone extension simultaneously provides an immediate integration of said personal computer assigned to said telephone extension in the established speech and data communication.

3.      A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication between a caller via said at least one telephone network and a competent party on one of said telephone extensions with a respectively assigned one of said personal computers is sent to another competent party and back after the respective competent party has sent a data record assigned the appropriate information to said integration element by operating said keyboard of the respectively assigned one of said personal computers, and a necessary signal leaving said integration element is applied at said intelligent telephone system and a connection to all said telephone extensions is established, so that a connection to every telephone extension simultaneously provides an immediate integration of said personal computer assigned to said telephone extension in the established speech and data communication.

4.      A circuit arrangement as defined in claim 2, wherein said integration element is

2

formed so that it is possible to hold an applied speech and data communication in conference where required together with at least one further competent party.

5.      A circuit arrangement as defined in claim 2, wherein said integration element is formed so that it is possible to hold the speech and data communication in conference with all parties of said telephone extensions.

6.      A circuit arrangement as defined in claim 1, wherein said integration element is formed so that data are transferable when a speech and data communication has been established by every competent part even during a conference and by all competent parties both to and from a caller to every participating competent party and between the competent parties with and without a caller.

7.      A circuit arrangement as defined in claim 1, wherein said integration element is formed so that in addition to the speech and data communication, a fax transmission is made simultaneously between the respective competent party and the caller using the keyboard of a respective one of said personal computers by using the connection of the respective personal computer with said at least one telephone network via said fixed line with the LAN with inclusion of the LAN server via said fourth line, via said third line with the integration element comprising said computing system, said software, said at least one connection element with the internal software, and via said second line with the intelligent telephone system.

8.      A circuit arrangement as defined in claim 1, wherein said integration element is formed so that in addition to the speech and data communication, a fax transmission is made parallel between the respective competent party and the caller using the keyboard of a respective one of said personal computers by using the connection of the respective personal computer with said at least one telephone network via said fixed line with the LAN with inclusion of the LAN

3

server via said fourth line, via said third line with the integration element comprising said computing system, said software, said at least one connection element with the internal software, and via said second line with the intelligent telephone system.